[No. 7,731.—Department Two.]

# ELEANOR MURDOCK, ADMINISTRATRIX, ETC., *v.* C. W. CLARKE ET AL.

PLEADING—EVIDENCE—VARIANCE.—It is a cardinal rule in equity, as in all other pleading, that the *allegata* and *probata* must agree, and that averments material to the case omitted from the pleading can not be supplied by the evidence.

ID.—ID.—ID.—FINDINGS.—A finding is useless and idle unless the facts found are within the issues, and a judgment based upon such facts can not be sustained.

MORTGAGEE IN POSSESSION—ACCOUNTING—RENTS AND PROFITS.—A mortgagee in possession will not be held accountable for anything more than the actual rents and profits received. He will not be held to account according to the value of the property, but for what he should with reasonable care and attention have received.

ID.—ID.—EXPENSES.—A mortgagee in possession is allowed for necessary expenses in managing the property.

ID.—ID.—ID.—Where it is agreed between a mortgagor and a mortgagee that the latter shall take possession of the mortgaged premises, and that a designated agent shall be employed thereon at a specified salary, the mortgagee is entitled to an allowance for money paid to such agent at the agreed rate; or to a proportionate part thereof where the agent is employed, not only upon the mortgaged premises, but also in private business of the mortgagee.

ID.—ID.—Such mortgagee is also entitled to an allowance in his account for money paid to the widow of the mortgagor after his death, in pursuance of an order given by him in his life-time, or of an order of the Probate Court.

APPEAL from a judgment for the plaintiff and from an order denying a new trial in the Superior Court of Plumas County. CLOUGH, J.

*George Cadwalader*, for Appellants.

*E. V. Spencer*, for Respondents.

MORRISON, C. J.:

This is a suit in equity, brought by the plaintiff as the personal representative of Adam Murdock, deceased, to obtain an account from the defendants respecting certain property which they held in their possession under and by virtue of a mortgage executed by Adam Murdock to them. The complaint alleges, that on the fourth day of February, 1875,

Adam Murdock borrowed from the defendants the sum of eight thousand five hundred dollars, for a period of one year, and that, to secure the payment thereof, he transferred and conveyed to them certain land, described in the complaint, and that it was distinctly understood and agreed, at the time such transfer and conveyance was made, that the same should operate simply as a mortgage. That from that date, to wit, the fourth day of February, 1875, Murdock continued in the use and occupation of the mortgaged premises down to the time of his death, and that after his death the plaintiff continued in the possession and occupation thereof until the month of February, 1876, at which time the defendants wrongfully entered upon the possession, and ousted the plaintiff therefrom, and still remain in possession thereof. That the actual value of the use and occupation of the premises is seven thousand five hundred dollars per annum. That the defendants have collected, used, and enjoyed all the rents and profits of said real property, and have neglected and refused to apply the same, or any portion thereof, to the payment of the said sum of eight thousand five hundred dollars, borrowed as aforesaid by Adam Murdock from the defendants. It is further charged, in this connection, that the defendants also took possession, at the same time, of divers articles of personal property belonging to the estate of Adam Murdock, amounting in the aggregate to a large sum of money in value, and have converted the same to their own use. The complaint further alleges, that on or about the month of April, 1875, the said Adam Murdock borrowed of the defendants a further sum of money, to wit, the sum of eight thousand dollars, and that at that time "he turned over and delivered" to the defendants, in pledge, and as security for the payment of the last-named sum of money, and also as additional security for the repayment of the sum first borrowed of defendants, fifteen hundred head of cattle, of the aggregate value of forty-five thousand dollars. That the defendants have had all of said cattle and the increase thereof from the first day of April, 1875, down to the present time, save and except such cattle as have been sold by the defendants. The complaint then proceeds to state, on information and belief, what the increase of the cattle has been, how many of the

cattle have been sold by the defendants, the amount realized
from such sales, and the quantity yet remaining in the posses-
sion of the defendants, unsold and undisposed of, and closes
with a prayer that an account may be taken, and such relief
granted to the plaintiff as she may in law or equity be enti-
tled to. The complaint is not verified.

The answer of the defendants is, first, a general denial of
all and singular the averments in the complaint, specific de-
nials of particular portions thereof, and the averment of
affirmative facts relied upon as a defense in the case. They
deny that the rents and profits of the premises described in
the complaint are of, or were of, the value of fifteen hundred
dollars per annum, or a greater sum than six hundred dollars
per annum; deny that they have collected any rents, issues,
and profits of said premises; deny that they have neglected
or refused to apply the products of the premises received by
them towards the liquidation of the indebtedness; deny that
they received from Adam Murdock a greater number of cat-
tle than seven hundred; deny that the increase of the cattle
has exceeded in the whole, since March, 1875, eight hundred
and eighty-six in number; deny that they have sold more
than six hundred and sixty-five head of cattle, or that they
have received more than thirteen thousand and twenty-seven
dollars and twenty cents therefor; deny that the value of the
cattle exceeded ten dollars per head. Defendants then set
out in their answer, a copy of the conveyance to them, exe-
cuted by Adam Murdock, which is on its face an absolute
deed of a portion of the lands described in the complaint, and
an assignment of a certificate of purchase for the residue;
but they admit in their answer that the transaction was a
mortgage, intended to secure the repayment of moneys loaned
by them to Murdock, and that it was understood and agreed
by the parties that the defendants were to hold the possession
of the property for the purpose of keeping said cattle and
their increase; that the defendants were from time to time to
market such cattle as became fat and salable, and were to
use the proceeds of sales made by them in the payment of
current expenses of the ranches, the taxes thereon, and all
other necessary disbursements, the remainder to be applied
to the payment of the indebtedness due from Murdock to the

defendants. The answer next contains a statement of the increase of the cattle, the number sold, the amount received, the moneys expended, etc., which they claim to have properly and lawfully laid out in and under the contract between Murdock and themselves. In conclusion, they make a claim for a large amount alleged to be still due them under the mortgage contract.

The Court filed ninety-three findings of fact and fourteen conclusions of law, terminating with the conclusion "that the plaintiff is entitled to recover from said defendants, upon paying to them, within sixty days from the entry of judgment herein, the sum of six thousand six hundred and twenty-three dollars and fifty-seven cents in United States gold coin, with the costs of this action, all the real property described in the engrossed complaint; also five hundred and sixty-four head of stock cattle, now in possession of defendants, through their agent, Stanton, branded 'U.,' or 'H. S.,' or 'R.' (anchor), or 'R. T.'; also thirteen head of horses of the original band, delivered to Clark & Cox by Adam Murdock; also all wagons three in number, delivered to them by said Murdock, one harrow· two plows, and five sets of harness, and all other personal property not lost or destroyed through use, delivered to said defendants by Adam Murdock on the twenty-second of March, 1875."

The findings are too numerous for us to examine them in detail, and we will simply refer to such as it is necessary for us to consider in connection with this opinion. The Court finds that the moneys were loaned to the deceased, Adam Murdock, by the defendants, and that an agreement was made between the parties that one Stanton should take possession of the property as the agent of the defendants. The eighteenth finding is as follows:

"18. That said Cox and Clark accepted said offer and proposals of said Adam Murdock, at some time in the early part of March, A. D. 1875, with this addition, that one J. B. Stanton should be selected as the agent of said Cox & Clark to take possession for them of said ranches, saw-mill, and personal property, at the salary or compensation of seventy-five dollars per month, and that the said Murdock, with his family, should be allowed to occupy the house on Beaver

Creek ranch with said agent Stanton;" and the following are other findings in the case:

" 19. That pursuant to said agreement, and with the complete assent of said Murdock, said J. B. Stanton, as the agent of said defendants, did on the twenty-second day of March, A. D. 1875, take possession of said Beaver Creek and Big Valley ranches, with their appurtenances, and did take possession, control, and management of all the cattle and horses on said ranches belonging to said Murdock, and of all agricultural and farming implements, and also of the undivided one half of the Washington or Quinn's sawmill."          .

" 37. That from the twenty-second day of March, 1875, until trial of this action, said J. B. Stanton has been in the charge and the management of said property conveyed and delivered as aforesaid to said Cox & Clark by Adam Murdock, and has been paid for said services by said Cox & Clark, seventy-five dollars per month, amounting to the sum of four thousand and two hundred dollars on the twenty-second day of November, 1879."

" 38. That since said defendants took possession of said property they have sold eight hundred and ninety-seven head of beef cattle, for which they have received the sum of twenty thousand eight hundred and ninety-eight dollars and seventy-five cents ($20,898.75), which was the full market value of said cattle. And that they have necessarily paid out in marketing said cattle the sum of three thousand seven hundred and two dollars and sixty-nine cents, leaving the net amount received by said defendants on account of sales of cattle seventeen thousand one hundred and sixty-six dollars and six cents."

" 39. The said amount of sales of cattle, with the expenses attending the same, is itemized as follows :

"From October 15, 1875, to the November following, the defendants sold one hundred and seventy-four head of cattle, for which they received the sum of three thousand eight hundred and seventy-six dollars and eighty cents ($3,876.80). On which they paid the necessary expenses, from the ranches to Red Bluff, the sum of one hundred and eighty-four dollars and sixty-three cents. And on which they paid in necessary expenses from Red Bluff to Sacramento and in marketing, the

sum of four hundred and sixty-two dollars and fifty cents, leaving as the net proceeds of cattle sold in 1875 the sum of three thousand two hundred and twenty-nine dollars and sixty-seven cents.

"From November 2, 1876, to November 28th following, the defendants sold one hundred and eighty-six head of cattle, for which they received the sum of four thousand five hundred and sixty-two dollars ($4,562). On which they paid in necessary expenses, from the ranches to Red Bluff, the sum of two hundred and sixty-eight dollars. And on which they paid in necessary expenses from Red Bluff and in marketing, the sum of five hundred and twenty-three dollars, leaving as the net proceeds of cattle sold in 1876, the sum of three thousand seven hundred and seventy-one dollars. From July 1, 1877, to September 21st following, the defendants sold one hundred and fifty-nine head of cattle, for which they received the sum of three thousand three hundred seventy-five dollars and seventy-five cents ($3,375.75). On which they paid in necessary expenses, from the ranches to Red Bluff, the sum of one hundred and ninety-five dollars and sixty-seven cents; and on which they paid in necessary expenses, from Red Bluff to Sacramento and in marketing, the sum of three hundred and twenty-three dollars, leaving as the net proceeds of cattle sold in 1877, the sum of two thousand eight hundred and fifty-seven dollars and eight cents. From March 24, 1878, to April 4, 1879, the defendants sold one hundred and forty-six head of cattle, for which they received the sum of four thousand three hundred and eighty-five dollars and forty cents ($4,385.40). On which they paid in necessary expenses from the ranches to Red Bluff, the sum of three hundred and eighty-five dollars and sixty-six cents, and on which they paid in necessary expenses, from Red Bluff to Sacramento, in feeding stock at Sacramento, and in marketing the same, the sum of eight hundred and sixty-six dollars and seventy-five cents, leaving as the net proceeds for cattle sold from March 24, 1878, to April 4, 1879, the sum of three thousand one hundred and thirty-two dollars and ninety-nine cents. From November 12, 1879, to November 14th following, the defendants sold two hundred and thirty-two head of cattle, for which they received the sum of four thou-

sand six hundred and ninety-nine dollars, and on which they paid in necessary expenses, in conveying the same to market and in marketing the same, the sum of five hundred and twenty-three dollars and sixty-eight cents, leaving as the net proceeds for cattle sold in November, 1879, the sum of four thousand one hundred and seventy-five dollars and thirty-two cents."

"41. That said Clark & Cox have sold eight hundred and ninety-eight of the cattle and the increase thereof, received from said Murdock, as aforesaid; and have sold no other or greater number, and have received therefor no other or greater sum than as above found."

"42. That during the months of September and October, 1875, said defendants received for grass cut on the Big Valley ranch, from various parties, the sum of four hundred and sixty-six dollars and seventy-six cents, and in 1876 said defendants received for grass cut on said ranch, from various parties, the sum of two hundred and sixty dollars, making the total receipts for hay ground sold, the sum of seven hundred and twenty-six dollars and seventy-six cents."

"48. That the said Big Valley and Beaver Creek ranches, with their appurtenances, have been used by said defendants. Clark & Cox, since they took possession of them in the same manner, and for the same purpose that they, and each of them, had been heretofore used by said Adam Murdock, and that such use has been a reasonable and proper use."

"49. That said ranches are situated in a section of country but slightly developed agriculturally, and remote from markets for agricultural products or products of any kind."

"50. That the chief beneficial use to which said ranches could be put, during the time said defendants have been in possession thereof, was for the production of grasses and the raising and subsistence of stock."

"51. That in the section of country where these ranches are situated, there is but a meager and uncertain demand for hay for market, and prudent husbandry will demand the cutting and stacking annually of no more than was reasonably required for the use of the stock controlled by the manager or occupant of the ranches."

" 52. That in the section of country where these ranches are situated, there is a large extent of grazing land belonging to the public domain which is uninclosed, and capable of subsisting, during the summer and fall of each year, much larger herds of cattle than have been turned upon them, and that over these lands the stock of different owners, as well as the Murdock stock, range at will, except as controlled by the herdsmen."

" 53. That in the section of country where these ranches are situated, there has been no demand for lands during the period defendants have been in possession of said ranches for use either for stock-raising or agricultural purposes, and that for either purpose, or for any character of use, said ranches have had no annual or other market rental value."

" 54. That the management of said ranches, since the defendants have been in possession thereof, and during the whole of said period, has been prudent and economical, and such as a prudent husbandman, with a knowledge of the surrounding conditions heretofore enumerated, would employ as to his own property of the same character and situation, with the exception of the amounts expended for fences, not constituting inclosures of any tract."

" 58. That all the moneys received by said defendants, from all the property of which they took possession, through said Adam Murdock, on the twenty-second day of March, 1875, other than such as was received from sales of cattle heretofore found, were not sufficient in any one year to pay the reasonable and necessary expenses of managing said property, exclusive of the wages of their said agent, J. B. Stanton, for each year, and excluding the taxes thereon for each year."

" 65. That the said plaintiff, Eleanor Murdock, was not in the possession of said property at the time of the death of said Adam Murdock, nor has she at any time since been in the possession of any part thereof, except as an occupant of a portion of the house on the Beaver Creek ranch."

" 85. That the use and occupation of said lands, with the farming implements, machinery, wagons, horses, and their equipments, and of the undivided one half of the Washington or Quinn's sawmill, has been worth to the defendants,

annually since they took possession thereof, treating defendants as the owners thereof and bound to provide for all the horses and cattle subsisted thereon (including the Murdock cattle and horses and their own), the sum of fifteen hundred dollars per annum."

"86. That the said ranches have produced, during each of the years that defendants have been in possession thereof, a much greater quantity of grasses than were consumed or used by the cattle and horses subsisted thereon by defendants, but no evidence has been produced to show that a prudent management of the premises demanded that any greater number should have been kept, or that the grasses growing thereon should have been converted into hay for market. I therefore find, that the use and occupation by defendants of all the premises and property, during the whole time defendants have possessed the same, has been prudent and economical."

The eighty-seventh finding, which is a very lengthy one, contains the following: "All these pieces or parcels of property, during said period, have had no actual rental value, according to all the testimony, and the only way of determining any value to all of said property, from the testimony, is to find the value of the use and occupation of the particular party in possession. Viewing the uses to which he can devote the property, without entering into speculation as to the possible capacities of the property for rendering profits, under more enlarged or different uses from those to which the occupant chooses to apply it, I value, therefore, the use and occupation of the whole property, as it has been actually used by the occupants, at the sum of one thousand five hundred dollars, as stated in the preceding finding 'eighty-fifth.'"

By the eighty-eighth finding it appears that no evidence was offered to show the actual value of the Big Valley ranch at the time defendants took possession thereof, and the eighty-ninth finding shows that there was no evidence offered to prove the value of the Beaver Creek ranch.

Among the conclusions of law from the foregoing and other findings of fact in the case, are the following: "That the transfers of the Big Valley and Beaver Creek ranches, made by Adam Murdock to the defendants on the fourth day

of March, 1875, were intended as mortgages, and that the defendants were entitled to enter into the possession of said ranches and had a right to occupy and use the same on and after the twenty-second day of March, 1875, until the payment of the note of eight thousand five hundred dollars should be made, according to its terms, and until the note of five thousand dollars should be paid, according to its terms; that when the defendants entered into the occupation of said real property, they became liable to account for a fair occupation rent of said property; that when they entered into the possession of the property the defendants did not become entitled, in accounting with the mortgagor, to be credited with the care and custody of such property, nor are they now entitled to such credit in this suit; nor did they become entitled to any allowance for the ordinary and usual expenses connected with the management of the property; that the defendants were not entitled to anything on account of moneys paid by them to Stanton for taking care of the property; nor are defendants entitled to any allowance for moneys expended by them in taking care of the cattle or for general work on the Beaver Creek and Big Valley ranches; nor for moneys expended by them for paying the traveling expenses of Stanton and others connected with the care of the property; that in the statement of the account, defendants must be charged for the first year, commencing March 22, 1875, and ending March 22, 1876, the sum of one thousand five hundred dollars; and they must be charged a like sum for each succeeding year.

This statement of the conclusions of law in the case is sufficient for the purposes of this opinion; and in deciding the case we will confine ourselves to the pleadings and the findings of fact filed by the Court.

The first ground of error which we will notice is, that it was error for the Court to charge the defendants with the rents and profits of the premises, at the rate of one thousand five hundred dollars a year, from the twenty-second day of March, 1875. This was clearly erroneous, and was not supported by the allegations in the complaint. The complaint alleges that the plaintiff "was left in the exclusive possession and occupation of the said real property (at the death of her

husband, Adam Murdock), and continued in such possession
until on or about the month of February, 1876, at which time
the defendants, without the consent of plaintiff and without
any legal proceedings therefor, wrongfully and forcibly ousted
her." It was said in the case of *Green* v. *Covillaud,* 10 Cal.
332, that a "plaintiff's case can not be better, as proved, than
it is as stated. It is a cardinal rule in equity, as in all other
pleading, that the *allegata* and *probata* must agree, and that
averments material to the case, omitted from the pleading,
can not be supplied by the evidence; or, as said in *Woodcock*
v. *Bennet,* 1 Cow. 711; S. C., 3 Am. Dec. 568, 'in a Court of
Chancery every material allegation should be put in issue
by the pleading.' " Thus, in *Bank of United States* v.
*Schultz,* 3 Ohio, 62, it was held that "a party can not
travel out of the matter alleged in his bill to make a
ground of relief; and accordingly the Court, even upon
an agreed state of facts, refused to find upon facts not
put in issue by the bill." And in the more recent case of
*Morenhout* v. *Barron,* 42 Cal. 605, the Court says: "The
complaint does not aver the agreement reserving the right to
rescind, which is found by the Court. * * * A finding
is useless and idle unless the facts found are within the is-
sues; and a judgment based upon such facts can not be sus-
tained."

The allegation in the complaint is, that the plaintiff was
in possession of the ranches down to February, 1876, and not-
withstanding this allegation, the Court finds that the defend-
ants occupied and possessed the ranches from March, 1875. The
finding of the Court is opposed to the allegation in the com-
plaint, and, therefore, can not stand.

2. In the next place, it is claimed by the appellants that
the Court erred in fixing the rental value of the two ranches
at fifteen hundred dollars per annum, as there was no evi-
dence to justify such a conclusion. By the fifty-second find-
ing, it appears that in the section of the country where the
ranches are situated, there is a large extent of grazing land,
constituting a portion of the Government domain, uninclosed,
and capable of subsisting much larger herds of cattle than
have been turned upon them, and by the fifty-third finding,
it further appears that where the ranches in question are situ-

ated, there has been no demand for such lands, either for stock-raising or agricultural purposes, and by finding eighty-seven, it is shown that the ranches have had, during the period they were occupied by the defendants, no actual value, *according to all the testimony.*

Mr. Jones, in his work on Mortgages (vol. 2, § 1122), says: "Where the mortgagee has himself occupied and improved the estate in person, the value of the occupation must necessarily be determined by evidence of experts, as to what ought to have been received for the rent of the property." And in section 1123, it is stated that "as a general rule, the mortgagee in possession is held to the exercise of such care and diligence as a provident owner in charge of the property would exercise." (The finding is that such care and diligence were exercised by the defendants in this case.) "But he will not be held accountable for anything more than the actual rents and the profits received, unless there has been willful default or gross negligence on his part. It is the fault of the mortgagor that he lets the land fall into the hands of the mortgagee, and the mortgagor should be required to prove actual fraud or negligence on the part of the mortgagee, before he can be charged for more than his actual receipts of rents and profits. He will not be held to account according to the value of the property; but for what he should, with reasonable care and attention, have received." (See *Harper* v. *Ely,* 70 Ill. 581; *Barron* v. *Paulling,* 38 Ala. 292; *Milliken* v. *Bailey,* 61 Me. 316; *Quinn* v. *Brittain,* 3 Edw. N. Y. 314.)

It does not appear from what data the learned Judge, who tried this case, arrived at the conclusion that fifteen hundred dollars a year was a just charge to impose upon the defendants for the use and occupation of the lands in question. They were in the immediate vicinity of large tracts of public land that were available, and might have been used by the defendants for the same purposes, free of rent, and the finding that the rents and profits were of the value of fifteen hundred dollars a year is directly opposed to finding eighty-seven, that the lands had no actual rental value. We do not think that the Court was authorized to find that the premises mortgaged were of the annual value of fifteen hundred dollars to the defendants.

3. The next objection is to the fifth conclusion of law, which is as follows:

" 5. That when said defendant took possession of said personal property, they did not become entitled, in an accounting with the mortgagor, or his assigns, or personal representatives, to be credited in their account with the ordinary and usual expenses connected with the care and custody of such property, nor are they now entitled to such credit in this action."

It appears from the findings that it was necessary to cut hay to feed the cattle during the winter season, and it is also in evidence that large expenditures were made by the defendants in taking care of the cattle, employing men to herd them, etc.   Why should the defendants not be allowed for these items ?   They were necessarily incurred in the proper discharge of their duties as mortgagees, and without them, the cattle would have been allowed to stray away or to perish with hunger.   A mortgagee in possession is allowed for necessary expenses in managing the property (*Hidden* v. *Jordan*, 28 Cal. 301), and it is a well-settled rule that "he who seeks equity must do equity."

4. We have considered some of the principal points presented in this case, but as it will be necessary to send the case back to have a new account taken, it is proper for us to pass upon all the questions that we find in the record, and upon which the action of the Court below will be required in taking such account.   The first of these points relates to the wages of Stanton.   It appears that Stanton was selected, by agreement of the parties, to take possession of the ranches, at a salary of seventy-five dollars per month, and in taking the account no allowance was made to the defendants for wages paid by them to him.   The services rendered by Stanton were certainly for the benefit of the plaintiff, and we can see no good reason why she should not be charged which her proportion of the expense incurred in the employment of him.

It is no sufficient reason for not charging the plaintiff, that there was other property belonging to the defendants placed under the care of the agent, for it would have been an easy matter to determine what proportion of the wages of Stanton should have been charged against the mortgagor.   If, for in-

stance, there were nine hundred head of cattle placed under his charge, six hundred of which belonged to plaintiff and three hundred to defendants, it would be equitable and just to charge the former with two thirds of such expenses, and the latter with the remaining one third, and the same reasoning will apply to other expenses incurred in the management of the property, both real and personal. The defendants should be allowed for such disbursements as were fairly and necessarily made by them in and about the property, in taking care of it, and managing it. This results from the implied if not from the express understanding between the parties. It never could have entered into the conception of either party, that the mortgagees should incur all the expenses incident to the care and management of the property; that they should be allowed no credit therefor, and should be made to account for everything that they received from it, by sales, rents, or otherwise.

"The agreement of the agent of the mortgagor or his assigns to the employment by the mortgagee in possession, of a person to take charge of mortgagor's estate, at a certain rate of compensation, binds its principal so long as the agency continues, and is competent, though not conclusive evidence that the same compensation should be allowed for the like services during the residue of the time that the mortgagee remains in possession," and again, "disbursements made by a mortgagee in possession for condition broken, to which the mortgagor or his assignee, with a knowledge or means of knowledge of the facts and circumstances, agrees and consents, are to be deemed reasonable, and must be reimbursed." (*Cazenove* v. *Cutler et al.*, 4 Metc. 246.)

It is not claimed in this case (and if it were, the findings would not support such a claim) that the property was not prudently and economically managed by the defendants, and they should be allowed, in the account taken by the Court, such charges as are reasonable and just.

5. It is further claimed that the defendants should be allowed for moneys paid to the plaintiff after the death of her husband.

The twenty-seventh finding is "that on the twenty-fourth day of December, 1875, after the death of said Adam Murdock,

the defendants paid Mrs. Anna Murdock, pursuant to a previous order of said Adam Murdock, the sum of two hundred and fifty dollars, and July 26, 1876, defendants paid plaintiff herein the sum of fifty dollars; and November 24, 1876, defendants paid plaintiff two hundred and twenty dollars, aggregating five hundred and twenty dollars paid Mrs. Anna Murdock and plaintiff since the death of said Adam Murdock." All of the foregoing items were rejected by the Court in taking the account, as appears from the seventh conclusion of law. In this there was error, but to what extent we are unable to state. If the whole amount of five hundred and twenty dollars was paid Mrs. Murdock in pursuance of an order given by Adam Murdock in favor of his wife, we see no reason why the defendants were not entitled to a credit therefor, or if the same or any part thereof, was paid under an order of the Probate Court, defendants would be entitled to a credit for such payment. The finding is not sufficiently definite to enable us to see how much was paid, that ought to have been credited in the account, but it is apparent that at least the sum of two hundred and fifty dollars paid in pursuance of an order of Adam Murdock should have been allowed as a credit to the defendants.

6. There is but one more question in the case which claims our attention, and that relates to the matters embraced in finding 60, which is as follows: "That said defendants expended for provisions used by Stanton, the family of Murdock, deceased, and men employed in the care of the Murdock, cattle and horses, in cutting hay, in general work on the Beaver Creek and Big Valley ranches, for wages paid to said men when so employed; for paying the traveling expenses of Agent Stanton and others connected with the care of said property; for blacksmith's bills; for repairing tools and implements used on said ranches, and for supplies; for the care of stray cattle, and for goods furnished the Quinn sawmill, the following sums," etc. The ninth conclusion of law is, "that the defendants are not entitled to be allowed in this action the sum of six thousand five hundred and seventy-nine dollars and nine cents expended by them, as stated in finding of fact number 60."

What has already been said by us shows, that there was

error in the conclusion arrived at by the learned Court in its ninth finding of law. Some of the items of expenditure enumerated in the sixtieth finding of fact ought to have been credited to the defendants, as we have already attempted to show; but whether expenditures incurred in behalf of the family of the deceased, or whether the funds furnished the Quinn sawmill constituted proper matter of credit, we are not enabled to state from the facts appearing in the transcript. If the hay was cut for the Murdock cattle, we can see no good reason why the defendants should not be credited with a reasonable sum therefor; and if the other expenditures were reasonably made in managing and taking care of the property, or for work done in and upon the same, defendant should be credited therewith.

We therefore think that the judgment and order should be reversed, and the cause remanded to the Court below, with instructions to take a new account in accordance with the views expressed in this opinion.

THORNTON, J., and SHARPSTEIN, J., concurred.