CHANCERY.    Tharp *vs* Feltz's Adm'r. &c.; and Burke
*vs* Same.

*Case* 4.            ERROR TO THE LOUISVILLE CHANCERY COURT.

*Mortgages.  Recitals.  Rents.  Jurisdiction.*

*Sept.* 8.           JUDGE MARSHALL delivered the opinion of the Court.

THESE bills, now consolidated, were filed separately by Tharp and Burke, setting up demands against the estate of Feltz, amounting in the aggregate, to $4.000, besides interest. Cotton, who administered on the estate of Feltz at Natchez, where he died, and Chenowith, who administered on his estate at Louisville, where he had resided until his visit to the South, were, together with the unknown heirs of Feltz made defendats. The bills charge, in effect, that Feltz had by two deeds, fraudulently mortgaged his real estate in Louisville to Cotton, for the purpose of hindering and defrauding his creditors; that he had sold out his interest in a store and tobacco factory, for $4,000 or $5,000, and taken the notes payable to Cotton; that the notes have been paid to or remain in the hands of Cotton; and that with these and other means in their hands, Cotton and Chenowith refuse to pay, &c. and are combining to defraud the creditors

*The allegations of the bills.*

of Feltz, and pretend that he had no personalty, and that no assets have come to their hands; and also, that Cotton is fraudulently proceeding, by two bills, to foreclose the two mortgages, without any credit on account of said note, or the money received from it or other means of Feltz. They call for full discovery as to the consideration of the mortgages, and as to all other matters referred to, and pray that the mortgaged property may be attached and subjected to their debts,

The answer of Chenowith shows that assets came to his hands, to a small amount only, not more than sufficient to pay expenses and satisfy a note on Feltz for $140, which he exhibits, and for which he has a right to retain the funds in his hands.

Cotton denies the fraud, &c. and states that the consideration of the first mortgage, which is dated 15th of August, 1835, and secures an alledged debt of $3,145, was money loaned by him to Feltz in 1832, at New Orleans, for which he took no note, and of which there was no witness, but which being loaned on two or three occasions, within a few days, he entered in a small memorandum book, which has been since destroyed.

The second mortgage, dated 27th of November, 1839, recites, that "whereas, the parties have this day settled and adjusted all matters of account between themselves, the said Feltz is indebted to the said Cotton in the sum of sixteen hundred dollars," and that sum is secured by the mortgage. In reference to the consideration of this mortgage, and the note for $4,000, Cotton states, that on or about the 25th of November, 1839, Feltz was indebted to him over and above the first mortgage, the sum of $6,578, for money loaned principally at Natchez, for which he had no writing and no witness, but had made memorandums in a book since destroyed, and Feltz holding an interest in a grocery and tobacco factory with Wm. H. Norton, it was agreed that Norton should purchase it for $4,000, and give his note therefor, payable to Cotton, for so much of said $6,578; that Feltz should secure $1,600, the other part of said sum, by mortgage (on a lot not included in the first mortgage,) and should give his own note for the residue, $978; that accordingly the

note was executed on the 25th of November, 1839, the mortgage was drawn by a lawyer, and dated and executed on the 27th of the same month, and that Cotton, (who was a negro trader,) having immediately after started down the river to the South, left the affair with Norton in the hands of Feltz, (who was a gambler or sportsman,) who being about also to descend the river, was to deliver Norton's note to Cotton, in the South; that accordingly this note was executed on the 3d of December, 1839, for $4,000, payable to Cotton in twelve months, with the privilege of further time &c., and a similar note was executed for $240, the interest on the $4,000 for one year, and that Feltz afterwards delivered both to Cotton. Thus he explains the recital of the second mortgage. He further states that the note for $240 has been paid, and that he has received partial payments, which are specified on the $4,000 note; and also some rents on the property contained in the two mortgages; that on the 23d day of February, 1840, he purchased from Feltz, in Natchez, a negro man for $850, paid as acknowledged by the bill of sale exhibited; that on the 25th of March, 1840, Feltz died at Natchez, and he administered there on his estate, and sold his trunk and clothes for $50, and got possession of three notes, amounting in the aggregate to more than one thousand dollars, but which he says are not collected, and not collectable; but he claims to apply what he thus received as administrator, and also for the rents, to the payment of the note for $978. He also exhibits a note of Feltz to Samuel Wakefield, & Co. for $1,103 63, with his (Cotton's) name indorsed on it, and claims that he is a member of the company, and entitled to a large interest in the note. He admits that the property contained in the first mortgage, was worth at its date, $10,000; denies that Feltz was indebted at that time except to him, and that so far as he knew, he was indebted to any others at the date of the second mortgage; admits that there was, as charged, great intimacy and familiarity between them, and that during the period of the alledged loans, he was himself borrowing money principally from the banks, but also from individuals, and in some cases at usurious interest for small sums, but

denies that he was cramped or embarrassed in his business.

There is no proof of the value of the property first mortgaged, except the admission of Cotton, above stated, and no proof whatever, of the value of the property last mortgaged. There is no proof sustaing the statements of the answer with respect to the indebtedness of Feltz, except that which is furnished by the mortgages and note exhibited, and by the fact that Norton's notes given for the property of Feltz, were, by arrangement between them, made payable to Cotton, and were afterwards in his possession.

Norton, whose deposition was taken in each of these cases, and also in the mortgage suits, appears to have had no knowledge of the transactions between Feltz and Cotton, except that they were adjusting their accounts a few days before he executed his note, and that by agreement, and at the request of Feltz, his notes were made payable to Cotton. He says Feltz told him that this was on account of other transactions than those for which the first mortgage was given, and after repeatedly stating in his earlier depositions, that Feltz never told him why his note was to be payable to Cotton, he says in his last deposition, that Feltz told him it was on account of what he owed Cotton over and above what was secured by the mortgages. But as even this statement does not prove an acknowledgment of indebtedness to the amount of $4,000, or any other particular sum over and above the mortgages, and as the acknowledgment implied in it might be satisfied by referring to the $978 note as the sum due above the mortgages, we conclude that there is no proof whatever of the alledged indebtedness, except the mortgages and the note for $978, and the fact that Norton's notes were made payable to Cotton, and afterwards came to his hands. On the other hand, there is the certain fact that these notes were given for the property of Feltz, and that consequently they should be regarded in behalf of his creditors, at least as held for his benefit, unless it appears that Cotton himself had an equitable claim to them.

If the answer of Cotton is to be taken as true through-out, it would appear that he was entitled to the proceeds of the sale to Norton, as payment of a just demand in addition to the sums secured by the mortgages and the note for $978. But surely in possessing himself of all the means of Feltz, and withholding them from other creditors, it is incumbent on him to support his claim by something more than the mere fact that he had thus possessed himself of the fund. Conceding that the two mortgages and the note for $978, are sufficient evidence of the indebtedness of Feltz to Cotton in such amount as upon fair construction of the three instruments would appear to be due at the date of the last; they certainly do not help to prove any additional debt, but rather tend to disprove that there was then a further admitted debt not secured by mortgage, nor even evidenced by note, but left by the creditor, upon the mere promise of the debtor to sell his property and take a note payable to his creditor, and deliver it to him in a distant country. It is true, the answer alledges a debt precisely equal to the mortgages, the note for $978, and the note of Norton; but so it might have done if the note of Norton had amounted to $10,000 instead of $4,000; and it derives no corroboration from this exact correspondence. Cotton had in his hands the mortgaged property, and Norton's note. He evidently intended that they should not be taken from him, nor diminished by the demands of the complainants. He had also received some assets, as administrator of Feltz, for which he is called on to account; and he brings forward the $978 note, which had not been mentioned in the bills, to cover whatever might be realized from these assets, and also from the rents of the mortgaged property, so that there might be no credit on the mortgage debts. It would have been absurd and incredible to say that at the date of these transactions, Feltz owed him more than the amount of these mortgages and notes, and to admit that he owed him less, would jeopardise or destroy his hold on the property. Under these circumstances, his answer requires some further corroboration as to the amount of the alledged in-

debtedness, in order to entitle him on that ground to re-
tain the proceeds of Feltz's sale to Norton.

THARP
vs
FELTZ'S AD'R.&c.

Matter of avoid-
ance must be
proved.

It it said indeed, that the complainants have made him
their witness, and that his statement should be credited
until disproved. But they charge him in effect with hav-
ing this note of Norton, and failing to credit it or its pro-
ceeds upon the mortgage debts, and he answers that Feltz
was indebted to him in the full amount of the note, be
sides those mortgage debts. Is not this matter of avoid-
ance, and must he not prove it? And if it be conceded
that the mere fact of his having in possession Norton's
note, made payable to him by ihe direction of Feltz, af-
fords some ground for inferring that it was so made paya-
ble on account of a debt of the same or greater amount
due from Feltz to him, is not this inference satisfied by
the mortgage debts and the note for $978? And in the
absence of all proof of any other debt, does it not prop-
erly point and apply to these debts? Then again, the
mortgage of the 27th of November, 1839, recites that on
a settlement of all matters of account between these par-
ties, made on that day, Feltz is indebted to Cotton
$1,600. If this solemn statement does not prove that
nothing more than $1,600 remained due on the first
mortgage, and the note of $978, executed two days be-
fore, it certainly furnishes evidence of a very high char-
acter, to prove that there was not then due any further
debt resting in mere assumpsit or simple contract. And
although the explanation given by the answer might pos-
sibly be true, and if true, might avoid this conclusion,
yet this explanatory statement is not itself established by
proof, and it is not probable that it would be recited
in a mortgage which was to go to record, that on a settle-
ment of accounts, $1,600 were found due, when $4,000
more remained due on assumpsit, between the same par-
ties, even though there were a verbal understanding that
the debtor would sell his interest in a partnership groce-
ry and factory, and take the note payable to the creditor.
At the date of the mortgage too, Norton was unwilling to
give $4,000 for this interest, though Feltz wished him to do
so; but he says it was understood that his note for whatever
amount, should be made payable to Cotton. And the

fact that in chaffering for his price, Feltz told him, after Cotton had left, that he had promised Cotton to get his note for $4,000, and that on his return he would make it right, does not materially vary the case. The note was given for $4,000, and there is no intimation of any deduction being made or required. It was the price which Feltz asked for his interest. As it is clear that Feltz did not make Norton his confidant in relation to his affairs with Cotton, his telling him that this transaction was different from that for which the first mortgage was given, amounted to nothing, and though literally true, would not be inconsistent with the inference now under discussion. The same remark applies to other communications by Feltz to Norton, and has already been made with regard to the statement of the witness implying an admission by Feltz, that he owed Cotton more than was secured by the two mortgages. But for reasons before given, little or no reliance can be placed on this statement.

But further, it now appears, that at the date of the second mortgage, and of Norton's note, Feltz owed the two debts now set up, and he may have owed more besides his debt to Cotton. And the evidence in the case of Tharp, renders it quite probable that he might have wished to avoid the payment of the debt therein set up. Be this as it may, being about to leave the State, his interest in the grocery and factory would be subject to attachment and sale in Louisville, in his absence, or if he sold and took the notes payable to himself, they might be attached either here or where he was going. And these considerations might have furnished a motive for taking the notes payable to Cotton, his intimate and confidential friend, either in addition to or independent of the object of paying or securing so much of the debt to him.

Again, Feltz was a gambler or sportsman, just going to the south, waiting only to raise a little money to fit him out and take him there, which he obtained by renting to Norton, for one year, the premises occupied by the grocery and factory, being the same included in the first mortgage, and getting in advance $250, directing him to pay the residue, $50, to Cotton, and to rent from him in future. Feltz then being in effect without money, would

want it in the South. Cotton would have money while there, though probably he had none to spare when setting out on the adventure. Feltz told Norton he expected to get money from Cotton if he should want it in the South; and the note may have been made payable to Cotton as the basis of the drafts expected to be made on him. It is to be observed, too, that the note was delivered by Norton to Feltz, and there is no evidence beyond Cotton's own statement, that it ever was delivered to him during the life of Feltz. As his administrator he would have become possessed of it if he had not before received it. He does not alledge that he made any advances on the faith of this note, but he seems to have advanced $850 in cash for the negro boy of Feltz, while in Natchez.

It is not necessary to decide for what specific purpose the note was made payable to Cotton. It is for him to show that it was so drawn in acknowledgment and payment of a debt in addition to the sums evidenced by the previous securities. He relies upon inference merely, to prove this, and we think the circumstances authorize several other inferences, which in the absence of all other evidence of such additional indebtedness, are more probable than that on which he relies. We conclude, therefore, that there is no sufficient evidence of Cotton's right to have the $4,000 and its interest, due from Norton, except in discharge of his demands on the two mortgages and the note for $978.

*When payment has been made to a mortgagee after the execution of a mortgage, the presumption is that it was made on the mortgage debt, and a mortgagee in a contest with creditors of mortgagor, asserting that the payment was on a different account, is bound to prove it.*

It is contended on the part of the complainants, that the recital of the last mortgage must be taken as showing that nothing more was then due but the $1,600 thereby secured, and that the subsequent payments being credited would extinguish that sum. But we think the safest construction of the recital, is that the settlement related only to matters of account, and did not embrace demands secured by deed of mortgage. If the parties intended to state that the first mortgage debt was reduced to $1,600, and that there was no other debt between them, then as this balance may be assumed to have been amply secured by the first mortgage, there would seem to have been no sufficient motive for the second, which would at most, operate only as additional security. This being unneces-

*A recital in a mortgage that "on settlement of accounts, mortgagor was indebted." &c. decided not to include a note given by mortgagor to mortgagee two days previously.*

sary to Cotton and without advantage to Feltz, the second mortgage would hardly have been resorted to in such a case, and especially with a recital in it showing that only $1,600 were due; a receipt or release would have been the more appropriate instrument. Upon the same construction of the recital we exclude from the settlement, though not without some doubt, the note for $978, bearing date two days before the mortgage, and due at date. The presumption is, that if this note had been included in the mortgages, it would have been restored to Feltz, unless he permitted it to remain with Cotton for a fraudulent purpose ; and adopting the principle that the evidences of debt executed by Feltz to Cotton, are in themselves entitled to as much consideration as those executed to the complainants, we think it devolves upon the complainants to defeat these evidences by proof of fraud or otherwise, and we do not think they are successfully impeached by any evidence or circumstance in the case. When the first mortgage was made it does not appear that Feltz was at all indebted, except as therein stated, and the suspicion that it was fraudulent, would be entirely gratuitous. It proves the indebtedness which it states, and corroborates the answer as to the manner in which it arose, though the circumstances stated are somewhat unusual. And although before the date of the second mortgage, Feltz had become indebted to others, this does not render it improbable that he had become further indebted to Cotton; but it rather proves that he might have needed money, and as Cotton was an intimate friend it may be presumed that having previously loaned him money for which he was amply secured, and having confidence in him, he continued to lend from time to time. The amount must be regarded as sufficiently established, in the absence of opposing facts, by the written acknowledgments of debt executed by Feltz. This is the species of evidence on which the complainants themselves rely for the support of their own claims as against the heirs of Feltz.

With regard to the note to S. Wakefield, & Co., there is no proof that Cotton had such interest in it as would authorize him to set it up against the complainants, or make it a ground for retaining, as against

them, any part of the funds in his hands. Besides, it may have been paid, and he being administrator of Feltz, his possession of it raises but slight presumption of non-payment.

Assuming then that the two mortgages and the note for $978, evidenced real demands against Feltz, and that Norton's notes for $4,000 and its interest, were made payable to Cotton, not in discharge of an additional debt, but as a means of paying so much of these debts without resorting to the realty, or as a resource on which Feltz might draw while in the South, or for some other purpose, it follows that whatever payments may have been made by Norton, on account of principal or .interest, should be applied to one of the real debts of Feltz to Cotton. If the whole has been ·paid, or if any remaining balance has been rendered unavailable and been lost by the failure of Cotton to use reasonable diligence in its collection, then the whole should be so credited, otherwise the representatives of Cotton should have the option of surrendering the note, which may by assignment under the order of the Chancellor or by other appropriate proceeding, be subjected to the demand of the complainant.

In regard to the manner of applying the credits—the rents received by Cotton from the mortgaged premises, should be applied as credits on the respective debts secured by the premises from which the rents accrued. This is substantially the case of a mortgagee in possession, and it is not at his option to appropriate the rents to the payment of debts not secured by the mortgage, as Cotton claimed and was permitted to do by the decree. But whatever he has realised, or might by proper dili gence have realized from the assetts acknowledged in his answers to have been received by him as administrator of Feltz, should, in this contest, be charged against him as diminishing his right to apply so much of the Norton debt to the note for $978. To the residue of that note after being thus diminished, so much of the Norton debt should be applied as a credit, and so much of the remnant of the Norton debt as on the principles already stated, may be chargeable to him, should be applied as a

THARP
*vs*
FELTZ'S AD'R.&c.

being entitled to retain the amount from creditors.

A mortgagor procuring the note of a third person made payable to mortgagee, without any farther proof of indebtedness by mortgagor to mortgagee, than the recitals of the mortgage, and that mortgagee, who had become adm'r. of mortgagor, as between himself and creditors, should account for and credit the note on the mortgege, or surrender it to be applied to the debts of creditors.

Mortgagee in possession shall account for rents.

credit, first to the debt secured by the first mortgage, after crediting upon it the rents from the property convey-ed by that mortgage, and then as a credit to the second mortgage debt, after, in like manner, crediting the rents belonging to it. The mortgage debts thus reduced, have respectively, the first lien on the property mortgaged. Tharp having filed his bill first, will be entitled to prece-dence over Burke.

The unknown heirs of the ac-ceptor of a bill of exchange are properly sued in chancery when the object is to set aside a con-veyance of real estate and sub-ject it; without any judgment at law, where the personal estate in the hand. of the domestic ad-ministrator are inadequate or the estate insol-vent.

Some question has been made as to the jurisdiction of a Court of Equity to enforce Tharp's demand, which is evidenced by the acceptance of a bill by Feltz, and is not reduced to judgment. But as the mortgaged estate could only be reached by suit against the heirs of Feltz, who being unknown, are only sueable in Chancery; as the personal estate in the hands of the domestic admin-istrator is utterly insolvent, being for the purposes of this demand, nothing; as the condition and beneficial own-ership of the Norton note required a discovery, and the notes were held by Cotton in trust, and may have come to his hands as the foreign administrator, and as although we have sustained the two mortgages against the charge of fraud in their origin, the circumstances affecting the last are not free from doubt, and both have been fraudu-lently kept up at their full amount, and were sought to be enforced without the appropriate credits, we think the bill of Tharp was properly entertained, although he had not obtained a fruitless judgment. The case is brought within the spirit, if not within the letter of the act of 1838.

The decree of the Chancellor is erroneous in allowing Cotton to credit the rents received from the mortgaged premises upon the note for $978, and also in allowing to him the Norton debt, without any credit therefor upon his other claims; and for these errors the decree is reversed and the cause remanded, with directions to ascertain the amount which, according to the principles above indica-ted, is chargeable to Cotton or his representatives, on account of rents, and of the Norton debt, and for further proceedings and decree conformable with this opinion.

*Thruston, Dozier and Haggin* for Burke; *Pirtle* for Tharp ; *Guthrie* for Feltz, &c.