## SCRUGGS' Executor & Others *v.* MEMPHIS & CHARLESTON RAILROAD, COMPANY & Others.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Decided April 30th, 1883.

*Equity—Feme Covert—Lease—Marshalling of Assets—Mortgage.*

A railroad company agreed with A that he might erect a building on property of the company, paying a ground rent therefor for a period terminable by notice, and that at the expiration or termination of the term the company would take the building at a valuation to be fixed by arbitration. A entered into possession, and constructed a valuable building, and then conveyed his interest in the term to his wife. A gave a note to B in which the wife joined as surety and the husband and wife executed a mortgage of the premises to B to secure payment of the note. A and his wife gave notice to terminate the term and called for an arbitration to fix the value of the improvements. Arbitration was had, and a price was fixed by the arbitrators as the sum to be paid for the improvements under the agreement and the date when the same was payable, and judgment was entered accordingly in a court of record. Pending these proceedings A died. At the time of the arbitration there was rent in arrear, and it was agreed that this should not enter into the arbitration, but should be subject to future adjustment. The company neglecting to pay the sum fixed by the arbitrators, the wife remained in possession after A's death, receiving the rents and profits, and attempted to enforce the judgment by an execution. On a bill in equity filed by the company to restrain the enforcement of the judgment and for an account, and a bill of interpleader making B a party for the protection of his rights, *Held*,

1. That the wife was entitled to interest on the judgment sum from the date fixed in the decree for the payment, and was bound to account for the rents and profits of the premises which were received, or might reasonably have been received by her after the date fixed by the arbitrators for the payment of the money from the railroad company.

2. That B's lien was valid under the laws of Mississippi, against the income of the property. And that, there being two funds in the possession of the court, one the decree and the other the interest upon the decree, a court of equity should so marshal the assets as to pay the lien of B from the interest on the decree.

On January 8th, 1872, a decree was rendered by the Chancery Court of Alcorn County, in the State of Mississippi, in favor of Narcissa Scruggs, one of the appellants, against the

Memphis and Charleston Railroad Company, for the sum of $31,666.66, and interest thereon from January 21st, 1871. This decree was, on December 14th, 1874, affirmed, on appeal, by the Supreme Court of Mississippi, and a decree rendered against the railroad company and the sureties on its appeal bond for the amount of the decree of the Chancery Court of Alcorn County, and interest thereon, and $1,583.33 damages, the whole to bear interest until paid.

The transactions which gave rise to the litigation which resulted in this decree were as follows: On July 7th, 1857, John W. Scruggs, the husband of said Narcissa, made a contract in writing with the railroad company, by which he agreed to erect on its land at Corinth, Mississippi, which was one of the stations on the company's road, a railroad hotel, and conduct it in a manner acceptable to the railroad company, and pay the company an annual ground rent of $250. It was provided that should the railroad company at any time become dissatisfied with the manner in which the hotel was carried on, the right was reserved to it to take possession thereof by paying Scruggs its value, and if Scruggs became dissatisfied with the schedule or management of the company, he reserved the right to surrender the improvements put by him on the land, and to require the company to pay their value at the time of surrender.

Scruggs erected a hotel building according to the contract, and kept therein a boarding house for the officers and employees of the railroad company, and a house of refreshment for travellers, until April 21st, 1871. About that time he conveyed the hotel building and other improvements by him put upon the land, and his leasehold in the land, to his wife, Narcissa. On the day just mentioned, Scruggs and his wife and the president of the railroad company agreed with each other that the lease should cease and determine, and the property should be surrendered to the railroad company. And as there was some dispute between the parties in reference to the construction of the contract of July 7th, 1857, they agreed to submit to arbitrators to decide upon the legal construction of said agreement, and the value of said improvements, and the amount which should be paid therefor by the railroad company to Mrs. Scruggs upon

the surrender of the premises.    All other questions arising
under said agreement, whether as to the rights of the party to
recover damages or otherwise, were expressly reserved.   It was
further agreed that the award of the arbitrators should be en-
tered as a decree of the Chancery Court of Alcorn County.

The arbitrators on April 21st, 1871, made their award as
follows :

"The Memphis and Charleston Railroad Company shall pay to
the said Narcissa Scruggs the sum of thirty-one thousand six hun-
dred and sixty-six dollars and sixty-six cents, in full payment of
all the improvements placed on the ground occupied by the
Scruggs House on the grounds of said company, at Corinth, Mis-
sissippi, and on payment of said sum of money, the said Narcissa
Scruggs shall deliver possession of said hotel to said railroad com-
pany.

"We do further decide and decree, that the true construction
of the contract is, that by its terms J. W. Scruggs acquires a per-
petual lease on the ground occupied by the said hotel on the pay-
ment of the sum of two hundred and fifty dollars per annum rent,
and subject to be defeated by the Memphis and Charleston Rail-
road Company only on the condition that Scruggs failed to keep
a first-rate eating house, and by the said J. W. Scruggs, on con-
dition that said Memphis and Charleston railroad failed to use
said hotel as an eating house.

"We do further determine, that from the evidence in the case
and the articles of submission and contract, that the sum to be
paid by the Memphis and Charleston Railroad Company to said
Narcissa Scruggs, is, as heretofore mentioned, the value of the
property surrendered to the Memphis and Charleston Railroad
Company."

The railroad company refused to pay the award or to take
possession of the property.  Whereupon, on May 2d, 1871, Nar-
cissa Scruggs filed her bill in the Chancery Court of Alcorn
County to enforce the performance of the award.   After the
bringing of the bill, the counsel of the parties filed in the case
an agreement in writing, as follows:

"In the above case it is agreed that the amount due to the de-

fendant as ground rent for the land upon which the Corinth Hotel is built, as specified in the lease to J. W. Scruggs, was not included in the award by the arbitration ; and it is agreed that the amount due for the same for said rent shall be deducted from whatever amount may be found to be due by the award of said arbitrators ; and that the said Scruggs shall be permitted to set off as against said rents, any amount due him by said railroad for board of employees, &c., the said amount to be. adjusted by reference to the master of the chancery court." ·

The litigation commenced by this bill resulted in the decree of the Supreme Court of Mississippi above mentioned. In the meantime, to wit, on August 13th, 1871, John W. Scruggs had died.

On January 8th, 1875, upon an attempt by Mrs. Scruggs to enforce the payment of this decree by execution, the bill in the present case was filed by the railroad company in the Chancery Court of Alcorn County. The bill averred that the decree of the Alcorn Chancery Court above mentioned, which was affirmed by. the Supreme Court of Mississippi, established a debt in favor of Mrs. Scruggs against the railroad company for $31,666.66, with interest from April 21st, 1871, and fixed. that date for the surrender of the premises by Mrs. Scruggs to the railroad company, and gave her a lien on the premises for the payment of the decree, and upon failure of the railroad company to pay the same within thirty days ordered a sale of the property, and that the decree left Mrs. Scruggs as a mortgagee in possession until the sum above mentioned was paid. The bill further averred that the decree should be reduced by the ground rents due the railroad company up to April 21st, 1871, and for the use and occupancy, rents and profits of said premises, from that date up to the filing of the bill, which had been enjoyed and received by Mrs. Scruggs, amounting in all to the sum of $25,000. The bill averred that Mrs. Scruggs had caused an execution to be issued against the railroad company and the sureties on its appeal bond to enforce collection of the entire decree ; that she was insolvent, and if allowed to collect the decree in full the credit to which the railroad company was

entitled would be a total loss.   The prayer of the bill was for an injunction to restrain proceedings on the execution, and for a reference to a master to report the amount due the railroad company for ground rents up to April 21st, 1871, and the amount of rents of the premises received by Mrs. Scruggs from that date to the date of the master's report, and that the amount reported by the master as due the railroad company for ground and other rents might be credited on the decree.

An injunction was allowed as prayed for.   Mrs. Scruggs answered the bill, admitting her retention of the possession of the property, but denied her liability for rents, and averred that she was not only entitled to the rents but also to the amount of the decree and the penalty adjudged by the Supreme Court, and interest on both, and set up said decree as *res judicata* and conclusive in her favor.

At this stage of the cause it was, on petition of the railroad company, removed to the District Court of the United States for the Northern District of Mississippi.

Upon motion made to the district court, the injunction allowed by the State court was modified so as to restrain the collection of only $20,000 of the decree, and Mrs. Scruggs was required to give, and did give, a refunding bond in the sum of $10,000, for the repayment of any sum which might on final hearing be decreed against her.   An execution having issued to collect the residue of the decree, less the said $20,000, the railroad company paid the marshal $19,217.

On September 24th, 1875, the railroad company filed its amended bill and bill of interpleader, in which it averred that one J. H. Viser claimed to have a lien on the decree in favor of Mrs. Scruggs against the railroad company, and it brought into court the sum of $2,510, the residue of the decree not enjoined or not paid to the marshal, and made Viser and Mrs. Scruggs defendants, and prayed that the rights of all parties might be settled and determined.

On December 24th, 1875, the district court decreed as follows: That the railroad company is entitled to have credited on the amount awarded and decreed (by the supreme court of the State) " the reasonable rents which she," Mrs. Scruggs,

had "actually received or might have received by prudent management, or for any period she actually, by herself or agent, occupied the hotel and property at Corinth, from May 11th, 1871, forward to the date of the receivers taking possession under a former order of this court," and ordered a reference to a master to report the amount with which the decree should be credited by reason of the rents received, and the use and occupancy of said premises by Mrs. Scruggs.

On the next day the court decreed that Viser was entitled to $1,382 of the $2,510 paid in by the railroad company on filing its bill of interpleader, that being the amount of a judgment recovered by him against Mr. Scruggs, and for the payment of which the railroad company had been duly summoned as garnishee.

Upon the coming in of the master's report, the court refused to deduct from the decree in favor of Mrs. Scruggs, any sum for ground rents due the railroad company, and having reduced the amount of rent reported by the master as due from Mrs. Scruggs, applied the residue as a credit upon said decree, and as the result of such application found that there was due from Mrs. Scruggs to the railroad company on the refunding bond the sum of $179, for which it rendered a decree in favor of the railroad company against Mrs. Scruggs and the sureties on said bond, and also rendered a decree in favor of Viser against the same parties for $3,807.27.

From this decree Mrs. Scruggs, and E. R. Matthews and James Matthews, the sureties on the refunding bond, appealed to this court.

*Mr. H. P. Branham* for appellant.

*Mr. William Y. C. Hume* and *Mr. David H. Poston* for appellees.

Mr. JUSTICE WOODS delivered the opinion of the court.

Mrs. Scruggs now complains of the decree, so far as it concerns the railroad company, on the sole ground that it directed the value of the rents and occupancy of the hotel and improve-

ments to be credited upon the decree in her favor against the railroad company.

She also insists that the decree against her in favor of Viser was erroneous, for reasons which will be found stated hereafter.

Her contention is, that having obtained a decree for the value of the hotel and improvements built by John W. Scruggs upon the lands of the railroad company, with damages for the appeal, and interest, to be paid upon the surrender by her of the hotel and improvements to the railroad company, she was entitled to the payment of her decree with interest, and as long as the railroad company failed to pay the decree, was not chargeable with the rents or the value of the occupancy of the premises while she retained possession.

We cannot assent to this claim. It appears from the agreement to submit to arbitrators, that both parties, the railroad company on the one hand, and John W. Scruggs and Narcissa, his wife, to whom he had conveyed his leasehold and improvements, on the other, had agreed that the property should be surrendered to the railroad company, and that, in pursuance of the original contract between John W. Scruggs and the railroad company, the latter was to pay the value of the improvements. It was mainly to fix the value of these improvements that the reference to arbitrators was made, and it was agreed that on the payment of the sum so fixed Scruggs and his wife should surrender the property to the railroad company, and the amount so fixed should " be a lien on said property."

The arbitrators decided that on the payment of the sum awarded by them, Mrs. Scruggs should deliver the possession of the hotel to the railroad company.

In her bill filed to enforce this award, Mrs. Scruggs prays that the railroad company may be compelled to pay the award, and that " her lien for the same on said property may be enforced."

The court in which her bill was filed made a decree to the effect that Mrs. Scruggs had a lien on the property for the amount of said award, with interest thereon from January 21st, 1871, ordered its payment within thirty days, and in default of payment, directed that the property should be sold and the

proceeds applied to the payment of the amount due on the award. This decree was in all respects affirmed by the Supreme Court of Mississippi.

We think that upon these facts Mrs. Scruggs must in equity be treated as if she was a mortgagee in possession. All the parties and the chancery and supreme courts have treated the sum awarded Mrs. Scruggs as a lien upon the property, and it was decreed, and no one disputed, that she was entitled to retain possession until her lien was discharged.

Treating her as a mortgagee in possession, she is accountable for the net rents and profits of the estate. If her possession was by tenant, she is accountable for such net rents and profits as she could with reasonable diligence have received. *Moore* v. *De Graw*, 1 Halst. Ch. 346; *Benham* v. *Rowe*, 2 Cal. 387; *Kellogg* v. *Rockwell*, 19 Conn. 446; *Harrison* v. *Wyse*, 24 Conn. 1; *Reitenbaugh* v. *Ludwick*, 31 Penn. St. 131; *Breckenridge* v. *Brooks*, 2 A. K. Marsh, 335; *Tharp* v. *Feltz*, 6 B. Mon. 6; *Anthony* v. *Rogers*, 20 Missouri, 281.

There is no equity in the contention of Mrs. Scruggs, that she should receive interest on the debt secured by her lien, and not account for the rents and profits of the property on which her lien rested while it was in her possession.

She says that the railroad company might have had immediate possession by paying the amount of the award. So any mortgagee in possession might say the mortgagor could take possession on paying off the mortgage debt, but this does not excuse the mortgagee from accounting for the rents and profits of the mortgaged property received by him.

It appears that the railroad company had ground for refusing to pay the sum awarded by the arbitrators as the value of the property. The only question submitted to the arbitrators was the true construction of the contract between John W. Scruggs and the railroad company, and the value of the property, or rather, as the arbitrators understood it, the value of the improvements placed by John W. Scruggs on the land of the railroad company. They were not authorized to adjust and settle the accounts between the railroad company and Scruggs. When, therefore, Mrs. Scruggs filed her bill to en-

force the award, it was admitted by her counsel that the matter of the ground rent was not included in the award, and that the same ought to be deducted from the amount awarded by the arbitrators, and that she should be permitted to set off as against such rents any amount due by the railroad company for board of employees, the said amount to be adjusted by reference to the master of the court.

The award did not, therefore, settle the controversy between the parties. The railroad company was justified in refusing to pay the award until the deductions therefrom, to which it was admitted that it was entitled, should be ascertained, and in defending the suit brought by Mrs. Scruggs to enforce the payment of the entire award. While this litigation was pending, the rents and profits actually received in cash by her were $10,514, and she herself occupied the premises in person for two years.

The court below found that there was due the railroad company, by reason of rents incurred by Mrs. Scruggs and the occupancy of the premises by her, the sum of $17,414.50. The testimony in the record fully sustains this finding. As Mrs. Scruggs insisted that she should have interest on the amount decreed her by the Chancery and Supreme Courts of Mississippi, she was not entitled also to claim the rents of the premises.

The case, therefore, stands thus: The railroad company was indebted to Mrs. Scruggs in the sum of $31,666, which was a lien upon the premises, and Mrs. Scruggs was in possession. On the other hand, the amount of the decree and interest, it was admitted, were subject to be reduced by the ground rents due to the railroad company. Mrs. Scruggs, who was shown to be insolvent, was proceeding to collect by execution the full amount of her decree, with interest; the railroad company was compelled, in order to protect itself from loss, to file the bill in this case to have the decree credited with the amount due for the ground rents. While this litigation was pending, Mrs. Scruggs received in cash rents to the amount of $10,514, and occupied the premises herself two years.

She was clearly liable to account for the rents received by her, and for a reasonable rental while the premises were actually occupied by her. The court below did not charge her

with a dollar for which she was not accountable. So far, therefore, as the decree relates to the controversy between her and the railroad company, it is a just and proper decree.

It remains to consider that part of the decree by which the debt claimed by J. H. Viser was ordered to be paid out of the money due from the railroad company on the decree in favor of Mrs. Scruggs.

After the bill of interpleader, filed by the railroad company, Viser filed his cross-bill against the company and Mrs. Scruggs, in which he alleged that, on May 11th, 1869, John W. Scruggs and Narcissa, his wife, executed to him a mortgage upon the leasehold and improvements thereon, known as the Scruggs House, of which said Narcissa was then the owner, to secure a note dated the same day as the mortgage, made by them for the payment to him of $5,000 twelve months after date, and prayed that the railroad company might be compelled to pay to him, out of the moneys due from it to Mrs. Scruggs, the amount due him on said note and mortgage. This relief was resisted by Mrs. Scruggs on the ground that, at the date of the note and mortgage, she was a *feme covert* and incompetent, under the law of Mississippi, to encumber her property for her own or her husband's debts.

In the suit which Mrs. Scruggs brought in the Chancery Court of Alcorn County to enforce the award of the arbitrators, Viser, who had been made a party defendant, had filed his answer and cross-bill, setting up said note and insisting that the mortgage given to secure it was a lien on said property. Upon appeal to the Supreme Court of Mississippi, that court decided that the mortgage was a good lien on the income of the property covered thereby. *Viser* v. *Scruggs*, 49 Miss. 705.

The property covered by the mortgage was represented by the decree rendered in favor of Mrs. Scruggs against the railroad company for $31,666. The income of the decree represented by the interest was, as appears by the report of the master, ample to pay the demand of Viser.

There was no application of the income until the court made the final decree in this case. There were then two funds, the principal and the interest of the decree. Viser had a lien on

the interest, and the demand of the railroad company was payable out of either principal or interest. Following, therefore, the practice of courts of equity in marshalling securities, *Aldrich* v. *Cooper*, 8 Ves. 382, the court directed the payment of Viser's lien out of the interest. In doing this no injustice was suffered by Mrs. Scruggs. The method adopted for calculating the amount due on the decree was according to the established rules in such cases. The debt due Viser was clearly proven. It was payable out of a fund which in effect was in possession of the court, and the court was right in ordering it to be paid.

It is contended for Mrs. Scruggs that the debt of Viser could only be satisfied by laying hold of the corpus of the property by a receiver and through him collecting the income and applying it. But in this case there was no necessity for a receiver for the property, and its income was virtually in the hands of the court. The appointment of a receiver was, under the circumstances of the case, unnecessary and impracticable. The property was a decree of court, of which a receiver could not take possession.

Complaint is made by appellants because the decree of the circuit court for the payment of Viser's demand was rendered, not only against Mrs. Scruggs, but against the sureties on the refunding bond given by her. It is said that the bond was payable to the railroad company and the court was not justified in rendering a decree in favor of Viser against the sureties.

The bond took the place of $10,000 which was virtually in possession of the court to do with as justice and equity might require. The court disposed of the sum payable on the bond as if it had been so much money in the registry of the court. It is true the bond was payable to the railroad company. But the amount decreed to be paid to Viser was deducted from the sum due the railroad company on the refunding bond, and the appellants have no ground of complaint.

*The decree of the circuit court was in all respects right, and it must therefore be affirmed.*

JUSTICES FIELD and MATTHEWS did not sit in this case, and took no part in its decision.