[No. 12955. In Bank. — September 3, 1889.

# C. C. SMITH, APPELLANT, *v.* E. H. SMITH, RE-SPONDENT.

EJECTMENT — CONSOLIDATION OF ACTIONS. — Two actions of ejectment for separate pieces of property brought in the same court by the plaintiff against the same defendant may be consolidated.

MORTGAGE — EFFECT OF DEED ABSOLUTE IN FORM MADE MERELY TO SECURE THE PAYMENT OF MONEY TO THE GRANTEE — POSSESSION. — It is the settled rule in California that if a deed absolute in form was made merely to secure the payment of money to the grantee, it is a mortgage, and does not pass the title. Such a deed gives a mere lien upon the property just as if the parties had put their agreement in the form of a mortgage, and consequently does not give the right of possession to the grantee.

AGREEMENT MADE THROUGH AGENT — REPUDIATION OF PART. — If a party makes an agreement through an agent, and claims under it, he cannot repudiate it in part on the ground that the agent exceeded his authority.

DEED TO MEMBERS OF A FIRM — EJECTMENT BY ONE PARTNER AGAINST INTRUDER. — A deed conveying title to the members of a firm enables one partner to maintain ejectment against an intruder.

PLEADING — AFFIRMATIVE DEFENSE IN EJECTMENT — WHETHER TO BE TRIED FIRST. — An affirmative defense that the deed relied on by plaintiff was a mortgage is covered by a denial of the plaintiff's allegation of ownership. It is not an equitable defense, and therefore the plaintiff is not entitled to have it first disposed of.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order refusing a new trial.

The facts are stated in the opinion of Commissioner Hayne.

*J. K. Law,* and *E. Jackman,* for Appellant.

*E. A. Rodgers, C. H. Clement, J. C. Campbell,* and *Thomas Gardner,* for Respondent.

The COURT. — A rehearing was granted in this case, and the same has been reargued, but we adhere to our former decision, and adopt the former opinion of Commissioner Hayne as the opinion of the court.

80 323
88 326
80 323
90 442
80 323
96 32
80 323
99 48
80 323
100 255
80 323
108 52
80 323
114 426
80 323
123 695

The judgment and order are reversed as to the north-west quarter of section 13, township 2 south, range 13 east, and the cause remanded for a new trial as to said property, and said judgment and order are in all other respects affirmed, the appellant to recover one half of the costs on appeal.

BEATTY, C. J., and THORNTON, J., dissented.

The following is the opinion of Commissioner Hayne above referred to, rendered in Bank on the 16th of March, 1889:—

HAYNE, C.—The plaintiff brought two actions of eject-ment against the defendant, one for a tract of 280 acres, and the other for a tract of 1,320 acres. The land was all in one county, and the actions were pending in the same court. Upon motion of the defendant, the court ordered the cases to be consolidated. We think that this was proper. The causes of action might have been united. (Code Civ. Proc., sec. 427; *Boles* v. *Cohen,* 15 Cal. 151.) And this being so, the court could order a consolidation. (Code Civ. Proc., sec. 1048.) The trial of the consoli-dated action resulted in a judgment for the defendant, and the plaintiff appeals.

1. Prior to 1874 the plaintiff and one D. G. Smith, his brother, were partners in the business of raising sheep. The title to most of the property stood in the name of D. G. Smith, having been conveyed to him by United States patent. For part of it a patent had not been issued, but D. G. Smith held a certificate of pur-chase therefor. In 1874 he bought out the interest of the plaintiff in the concern, agreeing to pay him there-for the sum of sixty thousand dollars. A portion of this sum was to be paid at or soon after the execution of the agreement, and promissory notes, each for the sum of five thousand dollars, payable at intervals extending up to 1878, were given for the remainder. After the disso-

lution, D. G. Smith carried on the business alone, but became involved in financial difficulties, and was unable to pay his debts, among which was the indebtedness represented by said promissory notes. In 1876 he made a deed to the plaintiff of the property in controversy, and at the same time made other deeds to plaintiff of lands in other counties, and bills of sale of certain sheep and other personal property. The business of sheep-raising was thereafter conducted in the name of the plaintiff. This condition of affairs continued to the death of D. G. Smith, in 1883. During all this time, and up to the commencement of the actions in 1885, the defendant, who was another brother, lived upon the property with his family, and his position is that he acquired a title by adverse possession.

One of the main questions litigated at the trial was, whether the deed of 1876 from D. G. Smith to the plaintiff was absolute in fact as well as in form, or was a mere mortgage. And as to the greater portion of the land we think that the decision upon appeal must turn upon this question. For reasons given below, we do not think that the possession of the defendant was sufficient to give him a title under the statute of limitations. But the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary. And if the deed of 1876 was a mere mortgage, it did not give him a title to or right of possession of the property. It is the settled rule in this state that if a deed absolute in form was made merely to secure an indebtedness to the grantee, it is a mere mortgage, and does not pass the title. (*Taylor* v. *McLain*, 64 Cal. 514; *Healy* v. *O'Brien*, 66 Cal. 519; *Raynor* v. *Drew*, 72 Cal. 309; *Booth* v. *Hoskins*, 75 Cal. 271.) We understand this rule to mean that (except with reference to subsequent purchasers without notice) such a deed gives a mere lien upon the property, just as if the parties had put their agreement in the form of a mortgage; and consequently that it

does not give a right of possession of the property. (Civ. Code, sec. 2927; *Raynor* v. *Drew*, 72 Cal. 309.)

In reference to this question, the jury found that the deed was intended merely to secure an indebtedness, and the verdict was incorporated by the court in findings of its own. The plaintiff contends that this finding is not supported by the evidence. But after a careful examination of the evidence, we do not think that the finding can be set aside upon this ground. D. G. Smith, at the time of the execution of the instrument, was in San Francisco, trying to raise money upon the property to satisfy the claims of the plaintiff and other creditors, who were pressing for payment. The final negotiation was conducted by one P. B. Smith, who was another brother. He swears positively that D. G. Smith refused to give an absolute deed, and that the transaction was merely to secure the indebtedness, and to enable plaintiff to raise money to satisfy the other creditors. The testimony of this witness was somewhat weakened on cross-examination, but was not destroyed, and the jury were entitled to give credence to it if they saw fit to do so. There was also evidence of certain declarations made by the plaintiff to third persons, which are inconsistent with the idea that he was the absolute owner of the property. In addition to this, the evidence of the plaintiff himself is in some respects unsatisfactory. He admits that he retained possession of some of the notes, and said they were to be paid *as they became due*, which seems inconsistent with the theory that the indebtedness was to be canceled by the deed itself. Taking everything together, we think that the case comes fairly within the rule as to conflicting evidence.

Some question is made as to whether P. B. Smith had authority from the plaintiff to take a mortgage instead of an absolute deed. But he swears that he informed the plaintiff of what had been done, and that plaintiff approved of it. And even if this was not done, it is per-

fectly clear that if the arrangement which was in fact made was merely to secure an indebtedness, the plaintiff cannot repudiate a part of it, and claim under the remaining part.

It results that the deed of 1876 does not give the plaintiff the right to maintain the actions.

There was a subsequent deed from D. G. Smith to the plaintiff for a portion of the land described in the deed of 1876. The title to this portion had not been obtained from the government at the time of the arrangement in question. D. G. Smith held a certificate of purchase of it. When the title was obtained from the government he executed the second deed above referred to. This deed was without additional consideration, and was evidently to carry out whatever arrangement was made at the time of the first deed. Counsel do not base any claim upon this deed, and we therefore dismiss it from further consideration.

So far as this part of the case is concerned it is immaterial whether the indebtedness secured by the deed of 1876 was ever paid or not. And it is also immaterial whether the defendant had acquired a title by adverse possession.

We perceive no prejudicial error in relation to this branch of the case.

2. But as to some of the land, viz., the northwest quarter of section 13, township 2 south, range 13 east, the plaintiff occupies a different position. The title to this portion was derived from one Yates, and the deed was to the plaintiff and D. G. Smith while they were partners. As to this portion, therefore, the plaintiff had a title independent of the instrument executed by D. G. Smith. And whatever may be the precise nature of the interest which one partner takes under a deed made to the members of the firm (see, generally, *Duryea* v. *Burt*, 28 Cal. 580), we think it clear that he has a sufficient

interest to enable him to maintain ejectment for the whole tract against a mere intruder.

The question, therefore, arises whether the defendant acquired a title by adverse possession. The finding is that he did. But we think that this finding is not supported by the evidence.

The defendant's account of the matter is, that D. G. Smith "told me to go on the place and live on it, and make it my home, and he would give it to me for to stay there permanently." This is somewhat ambiguous, but is not necessarily inconsistent with the idea of a holding under the true owners. And we do not think that the evidence shows that defendant held adversely to them. According to his own statement, the arrangement was, that he was to take some of the firm's sheep on the place, and take care of them on shares, and it is to be inferred from other testimony that he was to do something in the way of improvements and to pay some of the taxes. He went upon the property, planted a few shade-trees, put up some buildings, and some fences,— although the latter were put up as late as 1882 or 1883, — cultivated bits of the land and grazed some sheep on it, — at first those which he had on shares, and afterward some of his own. Aside from some vague statements as to what he "always claimed," we see nothing to show that he held adversely to his brothers. On the contrary, during a portion of the time he caused the property to be assessed to the plaintiff. His wife who, he says, conducted all the correspondence, wrote to the plaintiff a letter in which she said: "If we ever buy this place it must be done now." And defendant would not say that he did not know of an offer by his wife to purchase the property from the plaintiff, or that he made any objection thereto. And we do not think that this can be disposed of by saying that it was an offer to compromise. After the commencement of the actions he refused to take a lease from the plaintiff, but at one time he seems to have

been willing to do so. For (referring to the time at which the fences were erected) he was asked, "Didn't you state at that time that you would sign a lease if one was made to suit you?" and his answer was, "I may have stated it; there was considerable cheap talk there that day." D. G. Smith seems to have considered the property as his own, as is manifest from his making a deed of it to the plaintiff. Defendant heard of this deed, but made no comments thereon to either of his brothers. Upon the whole evidence, we think that it appears, without substantial conflict, that the possession of the defendant was not adverse to the owners of the property.

3. The plaintiff contends that his motion to proceed first with the trial of the affirmative defense set up by the answer should have been granted, for the reason that it was an equitable defense, and that the whole judgment should be reversed upon this ground. The affirmative defense was, in substance, that the deed of 1876 was a mortgage, and that the debt secured thereby had been fully paid. But the allegation that the deed was a mortgage was merely another way of saying that the plaintiff had no title, which was fully covered by the denial of the plaintiff's ownership. And so far as the plaintiff's right of possession was concerned, it was immaterial whether the debt had been paid or not. And while it may be possible that if the defendant had a title he would have been entitled to some affirmative relief in the nature of the removal of a cloud, yet he did not ask for such relief in terms, and no affirmative relief of any kind was awarded to him by the judgment. If, therefore, it be assumed for the purposes of this opinion that there was an irregularity, it is not one of which the plaintiff can complain.

The other matters do not require special notice.

We therefore advise that the judgment and order appealed from be reversed as to the northwest quarter of section 13, township 2 south, range 13 east, and the

cause remanded for a new trial as to said property, and that said judgment and order be affirmed in all other respects, the appellant to recover one half of the costs on appeal.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed as to the northwest quarter of section 13, township 2 south, range 13 east, and the cause remanded for a new trial as to said property, and said judgment and order are in all other respects affirmed, the appellant to recover one half of the costs on appeal.

A second petition for rehearing having been filed, the following opinion was rendered thereon on the 26th of September, 1889:—

The COURT. — A rehearing herein is denied, but the former judgment of this court is modified so far as to reverse the judgment of the superior court as to the costs taxed therein, leaving said costs to abide the ultimate determination of the action.