[No. 13472.   In Bank. — August 7, 1891.]

ELEANOR MURDOCK, ADMINISTRATRIX, ETC., APPELLANT, *v.* C. W. CLARKE ET AL., RESPONDENTS.

PLEADINGS — APPEAL — OBJECTION FOR FIRST TIME — ISSUE TRIED IN COURT BELOW. — Where a question is treated by both parties at the trial as an issue in the case, and considerable evidence in reference thereto is offered by each of them without objection from the other, the plaintiff cannot object for the first time upon appeal that by the answer of the defendant no such issue was raised in the trial court.

MORTGAGOR AND MORTGAGEE — MISMANAGEMENT BY MUTUAL AGENT IN POSSESSION — LIABILITY OF MORTGAGEE. — Where a mortgagor entered into an agreement with his mortgagees, to whom he had conveyed the mortgaged premises as security for previous loans, that if they would loan and advance a further sum he would place the property in the possession of an agent who should have the care and management of it with his assistance, and who should account therefor to the mortgagees, and that when they had been repaid the amount of their loans and advances the property should be returned to mortgagor, and such an agent was jointly selected and mutually agreed upon by the mortgagor and mort-

gagees, he becomes the representative of both parties in the management of the property, and the mortgagees are not accountable to the mortgagor for any waste or mismanagement by him.

ID. — TRUST RELATION OF MUTUAL AGENT. — The relation of such a mutual agent to the property and to the parties is similar to that of a trustee in a deed of trust, whereby the debtor transfers his property to a third person mutually agreed upon between them to hold and pay the income thereof to the creditor. In such a case the person agreed upon is regarded as the trustee of both parties.

ID. — ACTION FOR ACCOUNTING — FINDINGS — ITEMIZED STATEMENT — ULTIMATE FACTS. — In an action for an accounting between a mortgagor and mortgagees, the findings need not give an itemized statement of the account, but are sufficient if they follow the pleadings and find the ultimate facts, or secondary facts from which the ultimate fact necessarily follows.

ID. — EXPENDITURES BY MORTGAGEE — APPEAL — REVIEW, OF EVIDENCE — SPECIFICATIONS OF ERROR — CONCLUSIVENESS OF FINDINGS. — Where the conclusions of the trial court as to the character, amount, and necessity of the various expenditures incurred by the mortgagees in the care and management of the property do not appear to involve the violation of any established principle of law, but rest upon the weight of evidence, and the findings are challenged only in general terms, and not specifically, and the objections are addressed to the necessity or reasonableness of the expenditure rather than to its amount, the findings will not be disturbed upon appeal.

ID. — ERROR IN CHARGE OF TAXES — APPEAL — LIMITED REVERSAL. — An apparent error in charging the whole amount of taxes to the mortgagor, when only one third thereof should be charged to him, does not warrant an entire reversal of the judgment, but the trial court may be ordered to make the appropriate corrections, upon proofs to be taken upon that point; and if upon taking such proofs it shall appear to the court that the proper deduction has been made in the account already taken, no change will be needed.

ID. — ERROR AS TO AMOUNT ADVANCED — CORRECTION OF FINDING. — An amount found to have been advanced to the mortgagor for a particular object cannot be upheld if the finding is not supported by evidence pointed directly at the object for which the court finds that the advances were made, and the finding will be ordered to be corrected by the court below to accord with the proofs.

ID. — ACCOUNTABILITY OF MORTGAGEES IN POSSESSION — DUTIES AND LIABILITIES — TRUSTEES. — Mortgagees in possession are trustees only in a limited sense, as respects accountability for rents and profits received and the duty to present clear and accurate accounts. They are not liable for imaginary profits, but only for what they have actually received, if no negligence appears. They are liable for reasonable care and diligence in the management of the mortgaged property, but are not held to the strict responsibility of trustees, nor bound to account as such.

ID. — CATTLE KEPT WITHOUT RIGHT — EXTENT OF LIABILITY. — The fact . that the agent in possession and the mortgagees kept their own cattle

upon the mortgaged land, together with the cattle of the mortgagor, although without right, only renders them liable for a proportion of the running expenses, and of the value of the use of the land.

ID. — HORSES USED FOR BENEFIT OF RANCH — PROFITS OF STALLION. — The mortgagees are not chargeable for keeping their own horses and a stallion upon the land, where it appears that the horses were needed for ranch-work and were used for that purpose, and that the stallion was useful as a work-horse and for breeding purposes upon the ranch; nor are they required to account for moneys made by them from outside parties for services of the stallion during the breeding season.

ID. — PROPERTY NOT DELIVERED TO MORTGAGEES — SAW-MILL RUN BY PARTNER OF MORTGAGOR — LITIGATION WITH SURVIVING PARTNER. — The fact that a half-interest in a portable saw-mill located upon public land, which was included in the mortgage, was not taken possession of by the mortgagees, does not render them liable for their failure so to do, where it does not appear that the mortgagor ever delivered or tendered it to the mortgagees, and the evidence shows that the mortgagor allowed his partner to run it after the mortgage was given as he had done previously, and that his partner survived him; nor are the mortgagees bound to litigate with the surviving partner for the benefit of the estate of the mortgagor.

ID. — BILL OF SALE OF CATTLE AS SECURITY — EVIDENCE — PROOF OF RE-CEIPT OF LESS NUMBER — ESTOPPEL. — The fact that the bill of sale accepted as security purported to transfer a specified number of cattle does not estop the mortgagees from denying that they received that number.

ID. — MORTGAGE BY DEED ABSOLUTE — PASSING TITLE — EFFECT OF POS-SESSION. — A conveyance of land which was made merely to secure the payment of money is a mere mortgage, and does not pass the legal title; and the fact that the grantee is in possession under the conveyance does not enlarge or affect his interest in the property, though he has a right to retain possession until the mortgage debt is paid.

ID. — ACTION FOR ACCOUNTING — DECREE VESTING TITLE — SALE OF MORT-GAGED PROPERTY — PRAYER OF ANSWER. — In an action by the grantor under such conveyance for an accounting with the grantees, where the answer of the grantees prays that the property be sold, and the proceeds applied to the payment of the debt, the trial court is not authorized to decree that the legal title to the property should vest absolutely in the grantees upon the failure of the grantor to pay what was found to be due, within a specified time, but should decree in accordance with the prayer of the answer.

APPEAL from a judgment of the Superior Court of Lassen County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. D. Goodwin, D. W. Jenks,* and *W. N. Goodwin,* for Appellant.

*S. Solon Holl,* and *A. L. Hart,* for Respondents.

HARRISON, J.— February 4, 1875, Adam Murdock borrowed from the defendant Clarke $8,500, for which he gave him his note, payable in one year after date, with interest at one and a fourth per cent per month, and as security for its payment made a deed to him of a tract of 320 acres of land, known as the "Beaver Creek Ranch," and assigned to him a swamp-land certificate of purchase of certain other lands, known as the "Big Valley Ranch." These transfers were by instruments absolute in form, but Murdock continued to remain in possession of the property. Soon after this date, Clarke sold and assigned to his co-defendant Cox one half of said note and security. Thereafter, viz., March 22, 1875, Murdock borrowed from Clarke and Cox the further sum of five thousand dollars, and gave them his promissory note therefor. At this time Murdock's property, including the lands aforesaid, and his cattle and other personal property, were under attachment, and he was anxious to obtain the loan, in order to free his property therefrom. The defendants agreed to loan him the money, and make such advancements as might be needed to free the property, provided such arrangement could be made that they would be secure, and it was thereupon mutually agreed that the property should be placed in the possession of one J. B. Stanton, who should have the care and management of it, and should account therefor to the defendants, and that when the defendants had been paid the amount of their loans and advances, it should be restored to Murdock. It was also a part of the arrangement that Murdock should remain upon the property and assist Stanton in its management. Under this arrangement, Murdock, on the 10th of April, 1875, executed to the defendants a bill of sale of the property, and also of his interest in a saw-mill and other property connected therewith, which he owned jointly with one Quinn; thereafter the defend-

ants advanced for his use the further sum of $3,176.45, for which he gave them his promissory note, bearing date April 11, 1875, and Stanton was placed in possession of the property, and continued to manage it until his death, in 1886, after which one Snell was placed in charge thereof. Murdock died in December, 1875, and the plaintiff, having been appointed administratrix of his estate in 1876, qualified as such in October, 1878, and soon after brought the present action against the defendants for an accounting. The cause was tried by the court; findings were filed February 18, 1889, upon which a decree was entered July 3, 1889, wherein it found an indebtedness to the defendants of $31,926.37, for which they held the property as security, and adjudged that the plaintiff should pay that sum within thirty days; otherwise, that the said property should vest absolutely in the defendants. From this judgment, and an order denying a new trial, the plaintiff has appealed.

1. The court found, in substance, that Stanton was selected and mutually agreed upon by Murdock and the defendants to be the agent of both parties, to take the possession and management of the property assigned to the defendants, and that his subsequent holding and management thereof was in the capacity of such agent for both parties.

This question of Stanton's agency was treated by both parties at the trial as an issue in the case, and considerable evidence in reference thereto was offered by each party without objection from the other. Under these circumstances the plaintiff is not at liberty to urge here that by the answer of the defendants no such issue was before the court below. (*King* v. *Davis*, 34 Cal. 100.)

The appellant, however, contends that this finding is not sustained by the evidence, and a very considerable portion of the briefs on behalf of each party is devoted to a discussion of this question. Its importance is recognized, since the determination of the relation which

Stanton bore to the respective parties to the transaction very materially determines the principles upon which the account should be taken. If Stanton was the representative of only the defendants, his acts in the management of the property became their acts, and they are accountable for any mismanagement or waste committed by him, as well as for the use which he made of the property for his individual account; whereas if he was the agent of Murdock as well as of the defendants, the defendants would not be accountable to Murdock or to the plaintiff for any of his acts or conduct.

In view of the importance and bearing which this relation has to the correct decision of the case, we have given to the evidence upon this point very careful consideration, and are satisfied that it fully supports the conclusion reached by the court below. It is very likely that the importance of distinctly defining this relation, as shown by subsequent events, was not appreciated by either of the parties at the time that they were about to agree upon the person who should be selected to take possession of the property, and for that reason the testimony in reference thereto is somewhat meager; but a consideration of the relative situation of the parties and the object which each had in view, as well as the evidence of their negotiations in reference to such selection, warrants the conclusion that it was their intention that the person to be selected was to be the mutual representative of them all.

Murdock was greatly embarrassed with debt; his property was all under attachment at the instance of some of his other creditors; the defendants held his real estate as security for his indebtedness to them. Unless Murdock could get additional money with which to remove the attachments, he felt that his property would be sacrificed. If he could obtain this money, he thought that in a few months he would be able to settle his whole difficulty. The defendants were willing to accommodate

him, if they could be secured, but they knew that the
personal property would be no security to them if Mur-
dock was left in possession thereof.  A plan was finally
agreed upon by which the property should be put in the
possession of Stanton, who was to carry on the business
in the same way that Murdock had done, and account
for its profits to the defendants until their indebtedness
was paid.  Murdock was to remain on the place, and
assist Stanton in the conduct of the business as much as
he could in every way.  It is a significant circumstance
that when they came to the selection of the person who
was to take this possession, it was to be some one who
was to be satisfactory to Murdock, and that Stanton was
*jointly* selected as the person who was to manage and
control the property.  If it had been the intention of
the parties that the defendants were to take possession
and manage and control the property, there would have
been no occasion for them to consult Murdock about the
person who should have been put in charge, or to agree
that Murdock should remain on the place and assist him.
The defendants would in that case have selected their
own agent, and the relation of the parties would have
been that of pledgor and pledgee, with the strict respon-
sibility and rights of each.  We think that it fully ap-
pears from the record that the only purpose in the mind
of either Murdock or the defendants was, that while ac-
commodating him with the loan, they should be secured
against any loss of the security at the instance of his
other creditors, and that it was not the intention of either
party that Murdock should lose the control of his busi-
ness, or that the defendants should assume the respon-
sibility of its management.  Murdock himself was anxious
to keep the business alive, and it would have been incon-
sistent with the purpose of both parties to hold that it
was either the intention of Murdock to give to the de-
fendants the possession and management of the stock-
raising, or of them to assume it.  Hence the selection

of Stanton was made by their mutual consent, and the duties assumed by him were for the benefit of both. He was to manage the property for the benefit of Murdock, and in the manner in which Murdock had previously carried on the business, so that from the proceeds thereof Murdock's indebtedness to the defendants could be paid; and he was to hold the property in order that in their security for this indebtedness the defendants might not be prejudiced. His relation to the property and to the parties resembled that of a trustee in a deed of trust, where the debtor transfers his property to a third person mutually agreed upon between them to hold and pay the income thereof to his creditor. In such case, the person agreed upon is regarded as a trustee for both parties.

These are some of the considerations which could have been addressed to the court below upon the evidence before it, and which we may assume influenced it in making the finding referred to. It is needless to mention the established rule that the sufficiency of the considerations, as well as the evidence upon which they are based, is addressed entirely to that court. It was proper for the plaintiff to call upon that court to re-examine their sufficiency in her application for a new trial, but after that court had, upon such examination, declined to set aside its action, this court will not review its determination. The relation which Stanton bore to the property, so far as the liability of the defendants for his acts is concerned, was fixed at the time of his selection, and as between them, nothing was afterwards done which changed this relation. The death of Murdock within the year doubtless materially affected the early closing of the trust, but it did not change the position which Stanton bore to the property, or his relation to the defendants.

The court having determined that Stanton was the representative of Murdock, as well as of the defendants, in the management of the property, it follows that the.

respondents are not accountable for any of the acts of Stanton, or for any of the waste or mismanagement which is charged upon him by the plaintiff.

2. The appellant has also excepted to the sufficiency of the evidence to sustain the findings of the court in regard to their expenditures in the management of the property since its assignment to the defendants, and has also objected to the findings themselves upon this point, as not being sufficiently explicit, contending that the findings should be in reality an itemized statement of the account, rather than a summary of the transactions. It was not ne essary for the findings to give the items of the account.  It is not necessary in pleadings to give an itemized account (Code Civ. Proc., sec. 454), and a finding which follows the pleading is sufficient.  In this as in other cases, it is sufficient to find the ultimate facts, or secondary facts from which the ultimate fact necessarily follows.

The objections made by the appellant to the character, amount, and necessity of the various expenditures incurred in the care and management of the property are matters that were properly presented to the court below, as well upon the motion for a new trial as upon the original trial of the case.  Unless that court has made its determination upon some erroneous rule or in violation of some established principle of law which is apparent from the record, we cannot review its action in these respects.  In all matters in which its conclusion rests upon the weight of evidence, for the necessity or amount or reasonableness of the expenditure, such conclusion is not reviewable by this court.  If the court had found that a certain amount of expenditure had been made for any specific purpose, and the evidence fails to show that that amount of money has been expended for any purpose, it would be a sufficient reason for us to set aside the finding; but when, as in the present case, the finding is challenged only in gen-

eral terms, and not specifically, and the objections are addressed to the necessity or reasonableness of the expenditure, rather than to its amount, we must accept the finding as correct. The action of the court below is presumed to be correct, and upon an appeal therefrom it is incumbent upon counsel to point out the error. This, in a case like the present, where an account has extended over many years, can be done only by taking the account as a whole, rather than selecting individual items, and expecting this court to examine the entire record for the purpose of determining whether, in connection with the result as finally ascertained, those items have been properly allowed.

3. In apportioning between the defendants and the plaintiff the expenses of keeping the cattle, the court adopted as a rule that " one third of said expenses, including the wages of Stanton and Snell, but excluding the expenses of marketing said cattle, *and taxes*, should be deducted from the charge made against the Murdock estate."

The court erred in not holding that one third of the taxes upon the cattle should be deducted from the charge made against the Murdock estate. This error is so manifest that it is practically conceded by counsel for the respondents in saying that the insertion of the words "and taxes" in the finding was inadvertent. They also state in their brief that in fact the court did, in stating the account, deduct these taxes from the charge against the Murdock estate. We cannot, however, assume that such deduction was made, since in the same finding the amounts found to have been expended by the defendants upon said property are declared to be found " upon the principle of this finding." It is not necessary, however, to reverse the entire case for this error. The court below can take the proofs upon this point, and having ascertained the amount of taxes thus chargeable to the defendants, make the appropriate cor-

rection in the amount found due to them.  If upon tak-
ing such proofs it shall appear to the court that the
deduction has been made in the account already taken
and stated, no change will be needed.

4. In finding 14 the court finds that between April,
1875, and January, 1876, the defendants advanced to
Murdock the sum of $1,268.80, in addition to the
amounts embraced in the three note. The amount
thus found to have been advanced is distinct from the
amount found to have been expended in the care and
management of the property, and cannot be upheld by
an attempt to consolidate the whole amount of the
moneys paid by the defendants, but must find support
in the evidence poin ed directly at the objects for which  .
the court finds that the advances were made.  We have
examined the record with reference to this finding, and
have not been able to find therein, nor have counsel
pointed out to us, evidence in support of this finding of
payments beyond the sum of $353.10 that are not in-
cluded in the other findings.  The finding is based upon
the averment in the answer that the defendants ex-
pended the sum of $1,021 " in purchasing cattle belong-
ing to said Adam Murdock at execution sales against
him, and in releasing property of the same kind from
attachments."  There is no evidence in the record show-
ing that any portion of this amount was paid by the
defendants; and Cox, in his testimony, states that of this
amount the sum of six hundred dollars was sent to Stan-
ton for the purpose of releasing the attachments, and
should not have been included therein, as it was covered
by one of the notes.  It was shown that Stanton paid the
sum of $872.30 for releasing the attachments, of which
he had received the aforesaid sum of $600, leaving the
amount of $272.30, for which the defendants are entitled
to be reimbursed.  It also appears that Stanton paid for
the defendants $80.80 for the expenses of organizing a
swamp-land district.  This finding should therefore be

corrected by substituting $353.10 for the sum of $1,268.80 named therein.

5. Upon many of the points presented by the appellant, the opinion of Mr. Commissioner Hayne, rendered upon the former hearing of this appeal, so correctly expresses the law applicable thereto that we incorporate into our opinion and adopt his views thereon, as follows, viz.: —

" 1. It is contended for the appellant that the defendants were trustees, and were therefore bound to account as such, and are held to the same strict responsibility in the management of the property committed to their care. It is true that mortgagees in possession are often spoken of as ' trustees.' But they are only so in a limited sense. (*Ten Eyck* v. *Craig*, 62 N. Y. 422; *Clarke* v. *Sibley*, 13 Met. 213; *Cholmondeley* v. *Clinton*, 19 Ves. 268; 2 Jacob & W. 184; 1 Hilliard on Mortgages, 391.) As remarked by Shaw, C. J., in reasoning to a somewhat different point: ' In some very limited respects, a mortgagee is a trustee; as when he has entered and is in the receipt of the rents and profits, he is liable to account therefor, and in that respect may be denominated a "trustee." (*King* v. *Insurance Co.*, 7 Cush. 7.) That they are bound to account for the rents and profits is a matter of course. (2 Story's Eq. Jur. 13th ed., sec. 1016 a; *Raun* v. *Reynolds*, 15 Cal. 471.) And we think that the rule as to trustees in general, viz., that their accounts should be clear and accurate, and that all obscurities and doubts should be resolved against them (2 Perry on Trusts and Trustees, 4th ed., sec. 821), applies here. But the accounting is not to be extended to imaginary profits. Where no negligence or improper conduct is alleged, a mortgagee in possession is chargeable with what he has actually received, and no more. (*Benham* v. *Rowe*, 2 Cal. 407; 56 Am. Dec. 342.) In this case negligence and improper conduct are charged, and various claims are based thereon. It is therefore necessary to consider what was the

degree of care required of the defendants.  Chancellor
Kent, in his Commentaries, stated the rule as follows:
' If the mortgagee obtains possession of the mortgaged
premises before foreclosure, he will be accountable for
the actual receipts of the net rents and profits, and noth-
ing more, unless they were reduced or lost by his willful
default or gross negligence.  By taking possession, he
imposes upon himself the duty of a provident owner;
and he is bound to recover what such an owner would,
with reasonable diligence, have received.'  (4 Kent's
Com. 166.)  This statement of the rule has found its way
into the decisions of the courts and the treatises of text-
writers (see *Hidden* v. *Jordan*, 28 Cal. 309; *Moshier* v. *Nor-
ton*, 100 Ill. 68), and a similar passage was quoted from
a modern text-writer on the former appeal of this case
(59 Cal. 694); but it cannot be determined from the opin-
ion whether the court meant to establish a rule or not.
But if the term ' gross negligence ' is to be taken in its
ordinary sense, viz., as denoting the absence of slight
care (see Shearman and Redfield on Negligence, 4th
ed., sec. 49), it is manifest that the passage quoted is
somewhat inconsistent; for if the mortgagee, by taking
possession, ' imposes upon himself the duty of a provi-
dent owner, and is bound to recover what such an owner
would, with reasonable diligence, have received,' it is
evident that he is bound to something more than slight
care, and is responsible for something less than gross
negligence.  What we think the passage means, when
taken as a whole, is, that the mortgagee in possession is
bound to exercise reasonable care, and is responsible for
the want thereof.  This was the construction given to
similar language by a comparatively recent case in Ala-
bama.  The court said: ' On a bill to redeem, a mortgagee
in possession will not be held accountable for anything
more than the rents actually received, unless there has
been willful default or gross negligence, which, in such
case, is the measure of reasonable diligence.'  (*Gresham*

v. *Ware,* 79 Ala. 199.)   That reasonable diligence is required is laid down in several cases.   (*Shaeffer* v. *Chambers,* 6 N. J. Eq. 548; 47 Am. Dec. 211; *Strong* v. *Blanchard,* 4 Allen, 543, 544; *Scruggs* v. *Railroad Co.,* 108 U. S. 375.) It seems plain, upon principle, that the mortgagee in possession is bound to something more than slight care. And we think that Chancellor Kent, and the courts and writers who adopted his language, meant to say that reasonable care was required.   Applying this rule to the case before us, we think that the evidence shows, without material contradiction, that while there were some errors of judgment, the general management of the property was what was required.   Especially does this appear when it is considered that it was agreed that the ranches were to be run as they had been by the mortgagor.   This does not mean that if the mortgagor was negligent as to any matter, the mortgagees should be so too, but that the management of the mortgagees should be on the same general lines as that of the mortgagor; and as above stated, we think it was.

"2.   Much argument is based upon the undoubted fact that both Stanton and the defendants kept their own cattle upon the ranches, not separate from the Murdock cattle, but together with them.   This was certainly wrong.   But it was settled on the former appeal that it made them liable for a proportion of the running expenses (59 Cal. 695, 696); and in addition to this, the court below allowed the value of the use of the land. This, we think, was all that could properly be charged against the defendants on this acccount.   In addition to the cattle, the defendants sent some horses to the property.   This was because the horses were needed for ranch-work, and they were used for that purpose.   This was for the benefit of the property, and nothing can be charged against the defendants by reason thereof.   Similar remarks apply to the stallion.   He was useful as a work-horse and for breeding the ranch mares.   The

money made from outside parties during the breeding season belonged to the defendants.

"3. Part of the property mentioned in the bill of sale was a half-interest in a portable saw-mill located upon public land, and owned by Murdock in partnership with one Quinn. No profits were ever made from this mill, and it does not clearly appear what finally became of it. It was moved once while Quinn was in control. Afterwards it was moved again, and it seems that one Harris 'took it.' The court below found that the defendants never had possession, and the evidence leads us to the same conclusion. The defendants incurred no liability to Murdock or his estate by not taking possession; for it was as much his duty to deliver it to them as theirs to receive it, and there is nothing to show that he tendered it. Even if the defendants be considered as having been in possession, we cannot say that there was a want of reasonable care on their part. Quinn was allowed, with the acquiescence of Murdock, to run it, as he had been previous to the bill of sale. Af.er Murdock's death, Quinn was the surviving partner, with authority to settle up the affairs and dispose of the property. He is the person who is accountable to the plaintiff in relation to the matter. The defendants are not bound to litigate with him for the benefit of the estate.

"4. A point is made in relation to the number of cattle received by the defendants with the ranches. The bill of sale purports to transfer 1,322 head, and it is argued that its acceptance estopped the defendants from denying that they received that number. There is no force in this suggestion. After the bill of sale was signed, it was Murdock's duty to deliver the cattle in accordance therewith. If he did not perform this duty to its full extent, the defendants were certainly at liberty to prove the fact."

We have also reached the same conclusion that was

reached by the commissioner regarding the error in the decree, as well as his reasons therefor, viz.: —

"There is also a radical error in the decree. The court adjudged, in effect, that the legal title passed to the defendants, and it gave to the plaintiff a certain time in which to redeem, failing which, the property was to vest absolutely in the defendants. But as it is admitted that the conveyances were intended only to secure the payment of money, they were mere mortgages, and did not pass the legal title. 'It is the settled rule in this state that if a deed, absolute in form, was made merely to secure an indebtedness (to the grantee), it is a mere mortgage, and does not pass the title.' (*Smith* v. *Smith*, 80 Cal. 325. See also *Hall* v. *Arnott*, 80 Cal. 352; *Booth* v. *Hoskins*, 75 Cal. 275; *Raynor* v. *Drew*, 72 Cal. 309; *Healy* v. *O'Brien*, 66 Cal. 519; *Taylor* v. *McLain*, 64 Cal. 514.) And the fact that the mortgagees were put in possession does not change the rule. As was said in *Smith* v. *Smith*, above cited: 'Such a deed gives a mere lien upon the property, just as if the parties had put their agreement in the form of a mortgage'; and it has been decided that in this state the interest of the mortgagee is not enlarged or affected by the fact that he is in possession under the mortgage. (*Dutton* v. *Warschauer*, 21 Cal. 609.) The legal title therefore remained in Murdock, and vested in his heirs, and is not in the defendants; and the court below was not authorized to decree that it should vest absolutely in the defendants upon the failure of the plaintiff to pay what was due within a certain time. The defendants, however, have a right to retain possession until the sums due to them have been paid; and even if they have not, the court has power to impose proper conditions upon the plaintiff. (*Raynor* v. *Drew*, 72 Cal. 311; *Booth* v. *Hoskins*, 75 Cal. 271; *De Cazara* v. *Orena*, 80 Cal. 134.) And the answer prays that the property be sold, and the proceeds applied to the payment of the debt. The decree, there-

fore, ought to have provided that in case of the failure
of the plaintiff to pay what was due, within a specified
time, the property should be sold, and the proceeds ap-
plied to the payment of whatever is due to the defend-
ants."

The order denying a new trial is affirmed; but the
court below is directed to modify the judgment, in con-
formity with the foregoing opinion, by deducting there-
from the sum of $915.70, with proper allowance for
interest, the same being the difference between $353.10
and the sum of $1,268.80, found to have been advanced by
the defendants between April 14, 1875, and January 1,
1876, in addition to the amount of the three promissory
notes; and to further modify the judgment to such ex-
tent that one third of the amount of taxes paid by the
defendants upon the personal property after November
1, 1877, shall be deducted from the expenses incurred
in the management of the estate; and for the purpose of
ascertaining this fact, the court is directed to take such
testimony relative thereto as may be offered by the re-
spective parties.

The judgment is further modified by striking there-
from the following clause, viz.: "And it is further ordered,
adjudged, and decreed that if the plaintiff fails, neglects,
or refuses to pay said sum found due the defendants, as
aforesaid, on or before the expiration of said thirty days,
then, and in that event, said property, real and personal,
and all the right, title, and interest of the plaintiff as ad-
ministratrix of the estate of Adam Murdock, deceased,
and all the right, title, and interest which the estate of
Adam Murdock, deceased, has or had in or to said proper-
ty, and every part thereof, shall vest absolutely in the de-
fendants, and shall forever thereafter be the property of
the defendants, discharged and released from all claims
or demands on the part of the plaintiff, or on the part
of the estate of said Adam Murdock, deceased."

And the court is directed to insert in the judgment,

in lieu of the clause so stricken out, a direction to the effect that in case the plaintiff shall fail to make the redemption provided for in said judgment, the said property, held by the defendants as security, shall be sold for the purpose of satisfying the amount of said judgment, with such terms and provisions included in said judgment as are proper for a sale under a decree for the foreclosure of a mortgage; and as thus modified, the judgment shall stand affirmed.

McFarland, J., Garoutte, J., Paterson, J., and Sharpstein, J., concurred.